## THOMPSON ET AL. *vs.* THE STATE.

1. An indictment (under the Code) which charged that the defendants "before the finding of the indictment, assaulted and beat B. B., against the peace and dignity of the State of Alabama," held sufficient, on the authority of Noles v. The State, 24 Ala.

2. Where several persons are jointly indicted for an assault and battery, and one of them pleads guilty, the others, who plead not guilty, cannot claim, as a matter of right, to be tried separately from him.

3. A person who believes that his property has been stolen by a slave, has no right, without process of law, to search the slave's dwelling on the premises of his master.

4. Where several persons, without process of law, enter upon a man's premises, for the purpose of searching his negro houses for stolen property, and one

of them commits an assault and battery on the owner, the others are not responsible for it, unless the assault was committed during the prosecution of their original unlawful purpose, or within such a time afterwards as to satisfy the jury that it was connected therewith; but if the evidence conduces to show that their original purpose not only extended to the search, but contemplated the use of force if opposed or interfered with on the premises, a charge is properly refused which assumes that the common design was limited to the search.

APPEAL from the Circuit Court of Wilcox.
Tried before the Hon. NAT. COOK.

THE indictment was as follows:

"THE STATE OF ALABAMA,      *Circuit Court*,
    Wilcox County.          Spring Term, 1853.
"The grand jury charge, that, before the finding of this indictment, Thomas H. Thompson, Robert Thompson, John W. Creagh, Thomas Trawick, Hobson Thompson, Thomas Burps, and Calvin Nobles, assaulted and beat Bowen Bennett, against the peace and dignity of the State of Alabama."

On the trial, the death of Thomas Trawick, one of the defendants, was suggested, and the prosecution abated as to him; and a *nolle pros.* was entered as to John W. Creagh. The other defendants then demurred to the indictment, but their demurrer was overruled; "and thereupon Hobson Thompson pleaded guilty to the indictment, and the other defendants pleaded not guilty, and claimed as a right, and asked of the court, to be tried separate and apart from the said Hobson Thompson; which the court refused to allow." The trial then proceeded, and all the defendants were found guilty. The evidence, as set out in the bill of exceptions, shows that the defendants went to Bennett's house to search his negro houses for certain stolen property belonging to the defendant Burps, and while on the premises the assault was committed by the defendant Hobson Thompson, under the circumstances stated in the opinion of the court. The court refused several charges requested by the defendants, and they excepted to each refusal; all of which will be readily understood from the briefs and opinion.

The errors assigned are, the overruling of the demurrer to the indictment, the refusal to let the defendants who pleaded

not guilty be tried separately from him who pleaded guilty, and the several refusals to charge as requested.

GEO. W. GAYLE, for the appellants:

1. The indictment is invalid, in not being according to the forms of the common law.—See argument and authorities in Noles v. The State, at this term.

2. The indictment fixes *no time* at which the offence was committed. In murder cases, *where no limitation can run*, this may not be so important; but prosecutions for assault and battery are limited, and some time must be fixed within the statute, or defendants cannot know how to defend themselves.

3. The court below erred in refusing to let those who had pleaded "not guilty" be tried apart from one who had pleaded "guilty." This is not a question of discretion, growing out of an application to *sever the trials*. When the motion was made, he who had pleaded "guilty" had no trial to come off; his was a mere assessment of damages. The others, who pleaded "not guilty," may have been acquitted. The different pleas, then, produced two distinct causes, and it was illegal to try them together. The plea of "guilty" necessarily ended the case of him who pleaded it, and he became a competent witness for those who had pleaded "not guilty." He could not be heard in his own defence, or in mitigation of damages. His position was that of a man upon whom the law had spent its force, and whose trial had been severed by a separate conviction.

4. The court below should have given the first charge asked: "that if defendants believed that Bennett's negroes had stolen Burps' hogs, they had a right to search the negro houses of Bennett, if they did not commit a trespass on the property of Bennett. 1. The refusal of this charge is an assertion that, with authority of law, no man can go upon another's premises. If he commits no trespass, he has a right to go, to inquire whether the laws of the country have been violated or not. 2. This court has decided (and I have seen the decision) that any person may arrest a slave upon any criminal charge without a warrant. I have hunted for the decision, and have not been able to find it.

5. The court erred in refusing to give the second charge

asked : "that it is not intended by the law that a warrant should be issued to search a slave or his house, on a criminal charge against such slave." 1. The law of "search warrants" proposes to search *persons* and their houses (see Code, p. 661.) Slaves are not persons, until they are charged, arrested and put on trial for a criminal offence.—See Code 661, § 3776 ; 54th No. of Federalist. To arrest and search a white man without a warrant, would be a trespass ; but not so with a slave, if no violence was committed on his person. The slave and his cabin both belong to the master : and if there is no trespass committed in searching the one, there can be none in searching the other. Either can be done without a trespass upon the family of the owner.

6. The court below erred in refusing to charge "that if the original purpose and intent of the parties, to-wit, searching the negro houses, was, after it was done, approved of and acquiesced in by Bennett, then the defendants were in a new position, and any subsequent act of one of the defendants could not be connected with the said original intent and purpose of the parties." The record shows that after the negroes and their houses had been searched, Burps, who led the party, went with them to Bennett's house, " and stated to Bennett that his slave Josh had stolen two hogs from him, and that he had been searching said Josh's house for the meat ; to which Bennett replied, stating that said defendant had done right." The assault and battery was committed but by one of the defendants, and *all* were convicted, upon the ground that they were all responsible for the consequences of "the unlawful" act of search, viz., the assault and battery. 1. The original design was not unlawful, as shown above. 2. Therefore, no one was liable but Hobson Thompson, who struck the blow and pleaded "guilty." 3. If the search *was* unlawful, Bennett's acquiescence in and approval of it made it lawful, as in the beginning it was a mere civil trespass ; and Bennett being the prosecutor, whatever affects him affects the State. As *son assault demesne* would be a good defence to a civil action, so it is to an indictment. If, upon the facts, Bennett could not recover damages, the State ought not to convict upon the same facts, because the State would get an advantage of its citizen if it were otherwise.

P. T. SAYRE, with whom was THOS. J. JUDGE, for the Attorney General, *contra:*

The first charge asked was properly refused. It was abstract : there was no evidence showing that the defendants believed that Bennett's negro had stolen the hogs ; nor was there any evidence showing that Burps had lost any hogs. The charge was also contradictory, for the search of the negro houses, without consent, was, of itself, a trespass.

The negro houses were the property of Bennett, and they could no more be searched, without legal process, than could his dwelling house; and therefore the second charge was properly refused.

It is a matter of discretion for the court to allow co-defendants to sever, and the exercise of that discretion cannot be reviewed.

The fourth charge was also properly refused. The evidence shows that the defendants were at Bennett's upon a common illegal design ; their object had not been accomplished when the blows were inflicted ; they all participated in the pursuit of the negro woman; and they are all responsible for what any one of their number did. Bennett's words of approval were spoken before he knew the number, character and object of the parties who were present; and when the assault was committed they were all engaged in an illegal pursuit.

GOLDTHWAITE, J.—The questions raised upon the record as to the sufficiency of the indictment, we regard as settled by the decision in the case of Noles v. The State, at the present term. It is true, that in that case the crime was alleged to have been committed on a day certain, while here the offence, in conformity with section 3512 of the Code, is charged generally to have been committed before the finding of the indictment. The time, however, is not a constituent of the offence ; and if the Legislature may declare an indictment good, which does not allege the county in which the offence was committed, as we held in the case referred to might be done, upon the same principle the allegation of precise time may be dispensed with, which, in cases like the present, is entirely immaterial, the defendant having every legitimate

advantage upon the evidence which he could have if it was charged in the indictment.

Neither was there any error in refusing the application of the defendants who pleaded not guilty, to be tried separately from the defendant who pleaded guilty. We held in Hawkins v. The State (9 Ala. 137), that where several were jointly indicted for the commission of a felony, they could not claim separate trials as a matter of right; and the authorities examined in that case show, very conclusively, that applications for a severance, in criminal cases, are always addressed to the sound discretion of the court in which the trial is had, that it does not depend upon the defendants pleading several pleas, and that the exercise of this discretion cannot be reviewed on error. The trial of the defendant who pleaded guilty was not over; it still devolved upon the jury to assess the fine, and the court to pronounce its judgment. If he had not pleaded guilty, we have seen that his co-defendants could not, as a matter of right, have claimed a separate trial, and the mere fact that the jury would be required to look to the evidence, so far as he was concerned, solely for the purpose of assessing the fine, furnishes no sufficient reason to the others to claim a severance as a right, which they could not do had he put in a plea which cast upon the jury the further duty of ascertaining his guilt.

The first two charges requested by the appellants involve the proposition, whether any individual who believes that his property has been stolen by a slave has the right, without process of law, to search his dwelling house upon the premises of his master. We have no hesitation in saying, that this proposition cannot be sustained, either upon principle or authority. The house of the slave is the house of his owner; and the fact that it is used by the former as his dwelling does not change its character, so as to authorize an entry into it as a right, in any case in which an entry could not lawfully be made into the house of the master, except in cases in which the authority is expressly given by law, as in the case of patrols (Code, § 992.) If the law was otherwise, it would necessarily lead to very great abuses; and the case before us, with its accompanying incidents of turbulence, violence and outrage, affords a striking illustration of the consequences

to which the doctrine contended for·would lead.˙ It was to avoid such consequences, that the. law requires a party, in order to obtain a search warrant, first to make affidavit that his property has been stolen, and to state the grounds of his belief that it is concealed in the place proposed to be searched; and when this is done, it is not left to the party to prosecute the search, but it is conducted by an officer, who is responsible to the law for the proper execution of this duty.—Code, §§ 3774, *et seq.* Unless this is done, the parties invading the premises of the master, or the dwelling of the slave, are trespassers, and amenable to the law for their unlawful act.

The only remaining question arises upon the refusal of the court to give the last charge requested. This charge was, " that if the original purpose of the parties, to-wit, searching of. the negro houses, was, after it was done, affirmed and acquiesced in by Bennett (who was shown to be the owner of the slaves), then the defendants were in a new position, and any subsequent act of one of them could not be connected with the original purpose of the parties." It may be conceded, that if the act complained of was committed by one of the party only, and not done in pursuance of the common design, they alone who participated in the act are legally responsible. In other words, to render all liable in such a case, the act must happen during the prosecution of the original unlawful purpose, or within such a time afterwards as to satisfy the jury ·that it was connected therewith.—1 East Pl. C., c. 5, § 34, p. ·259. The true criterion is, whether the act is connected with the general or particular intent with which the· parties unlawfully confederated. If it falls within this intent, all are guilty. Upon these principles, if the evidence established that the original design was confined to searching the negro houses, and after that act was entirely over, an assault was committed, our opinion is, that it could not properly be regarded as done in pursuance of the common purpose. But if the evidence conduced to show that the original design of the defendants not only extended to the search, but went further, and contemplated the use of force˙ if opposed or interfered with upon the premises, then the charge was properly refused, for the reason, that it assumes that the common design was limited to the search. The

words are, "if the original purpose, to-wit, the searching of the négro houses, was," &c. The question, therefore, in relation to this charge, depends upon the fact, whether the record discloses testimony tending to prove that the original purpose of the defendants was not confined to the search of the houses, and that the act complained of was within the scope of the common design. That it tends to this conclusion, we all agree. The evidence shows, that while the search was going on, or just as it had terminated, a female slave fled shrieking from the negro house to the chamber of her mistress, pursued by two of the party, who planted themselves beside the door of the room in which she had taken refuge, apparently to prevent her from escaping ; and when the owner of the slave (and master of the house) stepped towards the door and attempted to pass in, civilly requesting the defendants to leave his house, that his family might not be disturbed and alarmed, he was assaulted and severely beaten by one of the party, without any of the others offering any assistance, or, so far as the evidence discloses, attempting to interfere by remonstrance or otherwise. Looking to the conduct of the parties, we think the jury might very reasonably have inferred the assent of all to the assault, and that the violence which was then offered entered into the general intent; and if such was the fact, all were guilty. It would make not the slightest difference, that the owner of the premises consented to or acquiesced in the search. The liability of all would result from the force being used in contemplation of the common unlawful purpose; and a charge which confined the intent within a more narrow compass than the evidence tended to establish, would have been incorrect.

Judgment affirmed.