Frank et al. (slaves) v. The State.

27  37
102  69

# FRANK ET AL. (SLAVES) *vs.* THE STATE.

[INDICTMENT AGAINST SEVERAL SLAVES FOR THE MURDER OF ANOTHER SLAVE.]

1. *Admissibility of defendant's declarations.*—On the trial of several slaves under an indictment for the murder of another slave, a witness for the State (one B.) testified, that he came up with the defendants immediately after the fight, going towards the house of one W.; that one of them was bleeding profusely from a wound on the back of his head; that on his inquiring how it happened, Frank gave him a false account of the fight, and said that the deceased (who had gone off wounded, and afterwards died from the effects of the wounds) was not much hurt, and had gone home, " and witness said that he evidently tried to conceal the fact that any serious hurt had been done to any one in the fight;" that he continued the conversation until he got to W.'s house, and witness then went in and brought W. out into the yard where the negroes were. W. was afterwards introduced as a witness by the prisoners, and testified, that he came out immediately upon B.'s going into the house, and that B. came back into the yard with him; " and the prisoners then of-

Frank et al. (slaves) v. The State.

fered to prove by him, that when he came out, Frank, in reply to questions propounded by him, made a full and fair statement of all that occurred in the fight—the wounds which he had inflicted upon the deceased, the manner in which the fight had been brought about, and the way in which he had been wounded." *Held*, that these declarations were admissible evidence for the prisoners, being a continuation of the conversation commenced with B., although he did not hear them, and tending to rebut the truth of his statement that Frank evidently tried to conceal the true facts of the case.

2. *Conspiracy—Liability of each for act of others.— Whether act was done in prosecution of common purpose, is a question for the jury, and charge excluding it is erroneous.* If several persons conspire to do an unlawful act, all are responsible for the acts of each, if done in prosecution of their common purpose ; but if an offence is committed by any one of them, from causes having no connection with the common object, he alone is responsible for its consequences. In such cases, it is a question for the jury, whether the act was done in prosecution of the original unlawful purpose, or was independent of it and without previous concert ; and a charge which excludes this question from their consideration, is erroneous.

3. *Participation in attack preconcerted by others, not murder.*—If A. and B., by preconcert, make an attack on C., in which D., not being privy to their common design, participates ; this will not be murder in D., if death ensues from wounds inflicted by either A. or B.

FROM the Circuit Court of Benton.
Tried before the Hon. THOMAS A. WALKER.

THE appellants, Frank, Jerry and Trussvan, with four other slaves, were indicted at the Spring term, 1855, of the Circuit Court of Benton, for the murder of another slave named La Fayette, otherwise called Fayette, and were tried at the same term. The State, on the trial, introduced evidence tending to show that the deceased was mortally wounded by Frank with a knife, in a fight which occurred late in the evening of the Sabbath, in Benton county, not far from the house of Mrs. Woodruff ; that during the fight Frank's hand was cut, and Jerry was wounded in the back of his head ; and that each of the prisoners participated, with malice, in the difficulty. The State then introduced Mr. Bruton as a witness, who testified as follows: "That on the evening of the difficulty, hearing the noise, and being not far from where the fight occurred, he went up there ; that he got there just after the fight had closed, but that Fayette was gone ; that he met Jerry and Frank, going towards Mrs. Woodruff's, and that Jerry was bleeding profusely from the wound in the back of

his head; that he asked Frank how it happened, and Frank said, that Joe had held Jerry, and Fayette had stabbed him while he was holding him, and that he (Frank) had got his hand cut by pulling the stick off the spear in the scuffle; that Frank also said, that Fayette was not hurt much, and that he had.gone home; and the witness said, that Frank evidently tried to conceal the fact that any serious hurt had been done by any one in the fight. He further testified, that he continued the conversation until he got to Mrs. Woodruff's, and then witness went in, and brought her son (Calvin Woodruff) out to where the negroes were in the yard."

During the further progress of the trial, the prisoners introduced said Calvin Woodruff as a witness, and, after proving by him that he came out immediately upon Bruton's going into the house,—that Bruton came back into the yard with him, that the prisoners were in the yard, and the house but a few steps off,—" offered to show by him that, when he came out, Frank, in reply to questions propounded by witness, made a full and fair statement of all that occurred in the fight —the wounds which he had inflicted upon the deceased, the manner in which the fight had been brought about, and the way in which he had been wounded. This conversation of Frank's with Woodruff, Bruton did not hear. The counsel for the State objected to this proof; the court sustained the objection, for the reason, that this was a different conversation; and the defendants excepted. This proof of the witness Woodruff was then offered, to rebut the idea that Frank, in the conversation with Bruton, concealed and kept back from him the circumstances connected with the fight; but the evidence was ruled out for any purpose, and the defendants excepted."

Among the several charges requested by the defendants, one (the fourth) was in these words: "If Trussvan struck Fayette while he and Jerry were fighting, and Frank afterwards stabbed Fayette, and killed him, without any preconcert on the part of Trussvan and Frank or Jerry, to kill Fayette, or to fight him, then Trussvan is not guilty of murder." To this request for instructions the court responded as follows: "The shape which this charge is asked, I will have to give it, but I must explain it to the jury. If the

assault was made by Jerry, and Fayette was forced into the fight, and Trussvan struck with a pine knot and knocked Fayette down, and while on the ground Frank stabbed him and killed him ; and there was no preconcert on the part of Trussvan, with Frank or Jerry, to kill Fayette, or to fight him,—then Trussvan would not be guilty of murder, but would only be guilty of manslaughter. On the other hand, if the assault was made by Fayette on Jerry. and Fayette was in fault ; and while they were fighting, Trussvan struck Fayette, without any preconcert with Jerry or Frank to kill or fight Fayette,—then Trussvan is not guilty of either murder or manslaughter. But, if the jury are of the opinion, from all the proof, that there was a preconcerted plan between Jerry and Frank to assault with malice and to beat Fayette, and Jerry made the assault, and attacked him with malice, and while Fayette was retreating Trussvan knocked him down with a pine knot, and while down Frank stabbed him, and killed him,—then Trussvan is guilty of murder, and so are Jerry and Frank guilty of murder." To the refusal to give this charge as asked, and to the qualification given, the defendants severally excepted.

The bill of exceptions sets out numerous other rulings of the court, to which exceptions were saved ; but, as they are left undecided by the court, it is unnecessary to state them here. The rulings above stated, among others, are now assigned for error.

A. WHITE and G. C. WHATLEY, for the appellants :

1. The evidence of Calvin Woodruff, as to what Frank said to him, ought to have been admitted. It was the continuation of the conversation to which Bruton had testified : it was upon the same subject, and had at the same time; and part of it having been introduced by the State, the defendants were entitled to the residue. It was clearly competent to rebut the testimony of Bruton, who had deposed that " Frank evidently tried to conceal" the facts, by proving that he immediately afterwards made a full and candid disclosure of all the circumstances attending the fight. The prisoners had been prejudiced, in the minds of the jury, by this statement of Bruton's, and they should have been allowed to correct the

erroneous impression. The testimony was not offered as evidence of the facts stated, but only to rebut or disprove the evidence of Bruton that Frank wished to conceal the facts. Oliver v. The State, 17 Ala. 587 ; Harris v. Taylor, 13 *ib.* 324 ; Bush v. Bradford, 15 *ib.* 323.

2. The manner in which the fourth charge was given, entirely emasculated it—took from it all weight in the minds of the jury. It was equivalent to saying to the jury, I do not wish to give this charge, but there is something in the shape of it—some art or trick about it—which compels me, reluctant though I am, to give it. The qualification was erroneous, also, because not explanatory of the charge itself. The Code (§ 2355), adopting the practice settled by several decisions of this court, declares that a party has the right to have a charge given or refused in the language in which it is asked ; and the construction placed upon this statute in Morris v. The State, 25th Ala. 57, gives the court power " to simplify and explain the charge asked and given, by such additional instructions as will prevent a misunderstanding or misapplication of it." But the qualification, when given as a qualification, must be in some sense explanatory of the charge : to allow the court to give an independent, disconnected charge, under the mere form of a qualification, would, in effect, destroy all the benefits intended to be secured by the statute. On this point, see Morris v. The State, 25 Ala. 57 ; The State v. Wilson, 2 Scam. 225 ; Cothran v. Moore, 1 Ala. 423.

The qualification to this charge is also erroneous in substance. It asserts two incorrect legal propositions : 1st, that a mere preconcert to fight Fayette, without any preconcert to kill him, would make Trussvan guilty of murder ; and, 2d, that if there was a preconcert, on the part of Jerry and Frank, " to assault with malice, and to beat Fayette, and if an attack was made by Jerry upon Fayette with malice, and Trussvan, while Fayette was retreating, knocked him down with a pine knot, and Frank stabbed him while down, and killed him,—then all three would be guilty of murder." There was no evidence whatever of any preconcert among the prisoners ; and to direct the minds of the jury to such preconcert, as a fact which might be inferred from the evidence, was error.—Montgomery v. Evans, 8 Geo. R. 178 ;

Hanson v. Thompson, 9 *ib.* 310 ; Murray v. The State, 18 Ala. 727 ; Snyder v. Witt, 15 Penn. 59. A mere agreement, on the part of Jerry and Frank, to assault and beat Fayette, would not make it murder in them, if Jerry afterwards assaulted him, and in the fight Frank killed him. The charge limits the design to beating Fayette ; and if Fayette fought willingly, and the intention was only to beat him, and not to kill him or do him great bodily harm, it would have amounted to no more than manslaughter.—Archbold's Criminal Evidence, vol. 2, pp. 230 to 232 ; *ib.* 250, n. 1 ; *ib.* 252, n. 3. This charge makes Trussvan guilty of murder, without any preconcert or knowledge on his part of the felonious intent, if the assault was preconcerted between Jerry and Frank, and Jerry assaulted Fayette with malice.—Roscoe's Criminal Evidence, p. 213 ; 1 Hale's P. C. 466 ; Wharton's Criminal Law, p. 29.

M. A. BALDWIN, Attorney General, and J. B. MARTIN, *contra.*

RICE, J.—(After stating the evidence above recited.) Frank is a slave ; Messrs. Bruton and Woodruff are white men. Just after the fight, Mr. Bruton met Frank. What Frank said to him, was *begun* by his inquiring, "how it happened." The conversation *continued* until they got to the house of Mrs. Woodruff, and Mr. Bruton went in, leaving the negroes in the yard. The evidence does not show that the conversation had *ended* when Mr. Bruton went into the house. Upon his going into the house, Mr. Woodruff *immediately* came out *with him* into the yard where the negroes were, when Frank, in reply to the inquiry of Mr. Woodruff, made the full and fair statement offered in evidence by the prisoners and rejected by the court. Although the evidence shows that Mr. Bruton " did not hear" the statement made by Frank to Mr. Woodruff, yet it does not show that Mr. Bruton left Mr. Woodruff, or the yard, before said statement was made, nor that Mr. Bruton did not remain in the yard with Mr. Woodruff, nor that he was not present, and in full view of Frank, whilst Frank was making the statement to Mr. Woodruff. The statements made by Frank to Mr.

Bruton and·Mr. Woodruff, related to the same subject ; and the statement to the one followed the statement to the other, without any other pause or interruption than was produced by Mr. Bruton's going into the house and bringing, out Mr. Woodruff, and in as quick and immediate succession as the relation of white men to a slave and their dominion over him would allow under such circumstances as are here disclosed by Messrs. Bruton and Woodruff.

We do not question the honesty of Mr. Bruton, in the expression of his opinion, that " Frank evidently *tried to conceal* the fact that any serious hurt had been done by any one in the fight." But conceding his honesty, he may be mistaken in this opinion. If he is mistaken, his mistake is prejudicial to Frank. His testimony made it a material question, whether, in fact, Frank had *this intent to conceal,* which Mr. Bruton honestly thinks he had. This question was for the determination of the jury. It was the right of Frank to lay before them every circumstance, connected with his statement to Mr. Bruton, which could aid them in coming to a conclusion upon this question of intent. He should not have been confined to what appeared in Mr. Bruton's testimony, but should have been permitted to submit to the jury the testimony which was offered by the prisoners and rejected by the court, as the same is hereinabove set forth. In rejecting the testimony thus offered, the court below erred.—The State v. Curtis, 12 Iredell's Rep. 270 ; United States v. Craig, 4 Wash. C. C. Rep. 730 ; Barthelemy v. The People, 2 Hill (N. Y.) R. 248 ; Cornelius v. The State, 7 English's Rep. 783 ; 1 Starkie on Ev. 46 to 48 ; 2 Waterman's Arch. Cr. Pl. 212–13.

If several persons conspire to do an unlawful act—an act *malum in se*—all the members of such illegal combination are responsible for the acts of each, *done in prosecution of their common purpose.* If, however, an offence is committed by one or more of them, from causes having no connection with the common object, the responsibility for such offence attaches exclusively to its actual perpetrators. In such cases, it is a question *for the jury,* whether the act done was in prosecution of the purpose for which the party had assembled or confederated, or was independent of it, and without any previous

concert.—1 East's Crown Law, 255 to 260, §§ 31 to 35 ; 2 Waterman's Arch. Cr. Pl. 211-1 to 211-4 ; Thompson v. The State, 25 Ala. Rep. 41.

This question was excluded from the consideration of the jury, by the last sentence of the fourth charge given by way of qualification. In thus excluding this question from the consideration of the jury, the court below clearly erred as to Trussvan and Jerry.

This charge is palpably erroneous as to Trussvan, for another reason. It makes him guilty of the murder of La Fayette, without any agreement or preconcert with Jerry or Frank, and merely because he knocked La Fayette down with a pine knot while retreating from Jerry's assault, although this knocking down did not produce death, and although Frank killed La Fayette by stabbing him after he was knocked down. Even where death ensues in consequence of an unlawful act not felonious, though the law may not consider the man innocent, it endeavors to measure the nature and degree of punishment by the degree of real guilt.—2 Waterman's Arch. Cr. Pl. 211-1.

We have already pointed out errors which compel us to reverse the judgment of the court below, and to remand the cause ; and we shall place the reversal upon the grounds above set forth. But we wish it distinctly understood, that we do not commit ourselves upon the other questions presented by this record. They may not arise on another trial, and we decline their consideration at this time.

Judgment reversed, and cause remanded.