THOMAS FERGUSON, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

The prisoner, being confined in jail with a number of others, in different cells, having effected his escape from his cell into the body of the jail, broke the locks of the doors of the others, and when the jailor made his appearance, a number of them rushed upon, seized, blindfolded, and robbed him. On these facts all of the prisoners are guilty of the robbery, though it did not appear affirmatively that the prisoner personally participated in the act of the robbery, nor in fact who did commit the robbery. The presumption being that the robbery was the common intent of all. Had the facts shown that an escape from the jail was the common intent, and that the robbery formed no part of the original design, but was an independent act by some others of the party, in which prisoner did not participate, the case might have been different.

Indictment for robbery, in Chatham Superior Court. Tried before Judge FLEMING, at the February Term, 1861.

The facts are stated in the opinion of the Court.

WILLIAM D. HARDIN, for plaintiff in error.

BACON, for the State.

*By the Court.*—LYON, J., delivered the opinion.

Thomas Ferguson, the plaintiff in error, was indicted and convicted in the Superior Court of Chatham county, on the charge of robbery, upon the following evidence: Charles Van Horn testified, "on the 19th day of June, 1859, on Sunday, about half past nine in the morning, I was in the yard to water my horse; was jailor; heard a noise in the jail, and went back to my office and got my pistol, and went in the cell part of the jail; locking the door behind me, and calling Flannagan to come and help me, that I thought some one was trying to get out of the jail; when I got in the kitchen part of the jail I saw Campbell, who rushed toward me; I leveled my pistol at him, Flannagan then threw my hand up, and I missed him; I was then tied to the door of the jail and robbed; prisoner was the man who let the others

out of their cells; they took a pistol from me worth $18 00, also a $20 00 bill on the Bank of the State of Georgia worth $20 00, one $10 00 bill on the Bank of Commerce worth $10 00, also, two $5 00 bills on the Bank of the State of Georgia worth $5 00 each; I was blindfolded, and cannot say who took my money; prisoner cut through his cell and let the other prisoners out by breading the locks to their cells; there was no other person to do it, except some Mayor's prisoners who had been in there but fifteen minutes."

*Cross.*—" I saw a man at the window, which first attracted my attention; I was on the lookout for an escape, because one of the prisoners had escaped before, and threatened to do so again if he got a chance; prisoners were closely confined; the prisoners were searched before they were confined, to see if they had any money; prisoner and Davis were in adjoining cells; the hole in prisoner's cell was cut through the back of the cell, where the ventilator was; a case knife was found in the cell, and a chisel was found at the window; Flannagan was up stairs, and I called him in with me; there were some bricks taken out of the top of the cell, but the hole made, by the taking of the bricks away, was not large enough for the passage of a man's body; Flannagan was sick, and was sitting on the steps when I called him; the kitchen door was ajar when I first entered in; the prisoners were all behind the door, Campbell first, Morgan second; Campbell threw me down, and Clark and Davis threw a blanket over me, but I did not see the prisoner; I was perfectly cool at the time; up to the time my head was covered I did not see prisoner; heard the prisoners talking while my head was covered; one said cut his throat, etc.; I was counting my money in the office, and placed it in my pocket; have no grudge against prisoner; don't think he would be out of jail forty-eight hours before he would rob somebody; he was in jail at the time for stealing twenty-five or thirty of my chickens."

Counsel for prisoner requested the Court, in writing, to charge the jury, "that before the defendant could be found guilty of robbery, the jury must find that the prisoner in-

tended the crime (robbery) committed, or that such crime was the natural, necessary or probable consequence of his original intention." And further, " that if prisoner was unaware of the intent to rob, he was not guilty." The Court refused so to charge, but on the contrary, charged, " that to find the defendant guilty, they (the jury) must find, first, that there was an understanding or agreement between the prisoners to escape; and second, that the robbery charged was in furtherance of that design; that if they found these facts that all the prisoners were guilty ; that as to the point made that the defendant must be present, it was a sufficient presence if the defendant was within call, or near enough to render assistance." And in reference to the request made the Court charged, that " they must find not only the act, but the intention, as act and intention must unite to establish crime; but that if they found the fact from which the law infers guilt, that inference of law included not only the act but the intention. If in point of fact, the crime charged did further the original designs to escape, he was guilty. This common design is not restricted to the mere fact of getting out of jail, but that it included the design to escape beyond the reach of justice, and that robbery might further this design by furnishing the means of escape; that they (the jury) were the judges of the law and fact, and could determine the law differently from my instructions if they were of that opinion."

There was no motion for a new trial, and the case comes before us simply on the charge of the Court as made, and the refusal to charge as requested.

The evidence is not very clear as to the robbery ; in fact, there is none as to who was the actual perpetrator of the act, but there was no question in the argument but that it was committed by one, if not the whole of the party, who made or attempted the escape, of whom the accused was one. The reported evidence does not show who escaped and who did not. The theory of the counsel's defence for the prisoner is, that to escape from the prison was the common design or intent of the party of persons

engaged in the assault upon the jailor, etc., to which common intent the prisoner was a party; but that the robbery was an independent act, no part of the common design, and to which the prisoner was not a party nor participant.    If this position was supported by evidence or justified by the facts, a foundation would have laid for the principle maintained by counsel.    The difficulty is, that there is no evidence before the Court to justify the charge requested, supposing it to contain a sound principle, a question which we will not discuss for the present, and for the reason, that there is no evidence to support it.    Speaking for myself, however, I have no hesitation in saying, that if the hypothesis was a true one, that is, that the robbery was committed by another, and when the prisoner was not present nor participating in it, that then he would not be guilty on the proof before the Court.

The facts of the case, as disclosed by the record, are, that this prisoner having effected his escape from his own cell, breaks the locks off the doors of the others, who, as soon as the jailor makes his appearance in their midst, set upon, bind, blindfold, and rob him, the prisoner being one of the party. · On these facts, the act of one was the act of all.    All were alike guilty, and the Court did right to refuse the request.    Indeed, the Court went further than was necessary, not, however, to the prejudice of the prisoner.

Let the judgment be affirmed.