# CASES

IN THE

# SUPREME COURT OF ALABAMA.

## DECEMBER TERM, 1886.

## Williams *et al. v.* The State.

*Indictment for Murder.*

1. *Homicide by one of several, in prosecution of conspiracy to attack and beat.*—If five or six persons conspire together to invade a man's household, and go there armed with deadly weapons for the purpose of attacking and beating him, and, in furtherance of this common design, one of them gets into a difficulty with him, and kills him, the others being present, or near at hand, the same are guilty of murder although they did not intend to kill.

2. *Quashing venire; mistake in juror's name.*—A mistake in the name of a person summoned as a juror, or a discrepancy between the original *venire* and the copy served on the prisoner, is not sufficient cause for quashing the *venire* (Code, § 4876), unless the court, in its discretion, is of opinion that the ends of justice so require.

3. *Same; when motion is too late.*—A motion to quash the *venire*, on account of a mistake in the name of a juror, or a discrepancy between the original *venire* and the copy served on the defendant, comes too late after the jury has been impanelled and accepted by the State.

4. *Declarations of one defendant as evidence against others; admissions implied from silence.*—Declarations made by one of several defendants, in the presence and hearing of the others, charging them with having instigated him to the commission of the offense, naturally call for contradiction or reply, if untrue; and no reply being made, they are admissible evidence as an admission implied from silence.

5. *Objection to evidence admissible against one of several defendants.* When evidence is offered against several defendants, on trial jointly, which is admissible against one of them only, it can not be excluded from the jury on motion, but a charge should be asked limiting its effect.

6. *Drunkenness as excuse for homicide.*—Drunkenness by the defendant, at the time of commission of the homicide, does not entirely excuse the crime, but can only operate at most to reduce the grade of the offense from murder to manslaughter, by rebutting the existence of malice.

1

[Williams *et al.* v. The State.]

7. *Charge as to proof of conspiracy, and liability of conspirators for acts of each other.*—A charge which requires proof of an express agreement to do an unlawful act before the defendants would be guilty of a conspiracy, ignoring the evidence which tended to prove that they were all present, or near at hand, when the homicide was committed, encouraging its perpetration, is misleading if not erroneous, and is properly refused.

8. *Acts and declarations of conspirators as evidence against each other.*—When evidence has been adduced *prima facie*, establishing a conspiracy among the several defendants, the acts and declarations of each in furtherance of the common design, are the acts and declarations of all.

9. *Abstract charge.*—A charge asked, not supported by any evidence shown by the record, is properly refused because abstract.

APPEAL from Circuit Court of Barbour.

Tried before Hon. J. M. CARMICHAEL.

The appellants in this cause were indicted for the murder of Madison Caesar by shooting him with a pistol. On the trial, Shade Scarborough was convicted of murder in the first degree, and sentenced to be hanged; John Williams and Dennis Williams were convicted of murder in the second degree, and sentenced to the penitentiary for forty years; Jim Williams, Will Williams and Tiola Scarborough were convicted of murder in the second degree and sentenced to the penitentiary for twenty years.

One of the State's witnesses testified, that just after the shooting, she met all the defendants about one hundred yards from the house where the killing occurred; that in reply to her inquiry, Shade Scarborough said 'he had shot Madison Caesar; John and these boys got him to do it.' John said "Hush"! The others standing present did not say anything. The defendants severally moved to exclude this evidence from the jury.

The other facts in this case, and the charges given and refused by the court, sufficiently appear from the opinion.

A. M. McLENDON, for Shade Scarborough, cited *Stewart v. State*, 78 Ala. 436; *Harrison v. State*, 78 Ala. 5; *Wills v. State*, 73 Ala. 362.

JERE N. WILLIAMS, for other appellants, contended that if there was a conspiracy simply to commit an assault and battery upon deceased, and Shade Scarborough, without preconcert with the other defendants, or information on their part as to his purpose, went beyond the common design and took the life of the deceased, then he alone is guilty of the homicide.—*Thompson v. State*, 25 Ala. 41; *Frank v. State*, 27 Ala. 37; 2 Wharton's Crim. Law, §§ 1402,

[Williams *et al* v. The State.]

1341, 220, 231, 1406 ; 1 Russell on Crimes, 512 ; 1 Wharton's Crim. Law, § 397 ; 3 Greenl. 42, 89 ; 1 Greenl. 139.

T. N. McCLELLAN, Attorney-General, *contra.*—The clerical mistake in denominating the jurors summoned for this case, " regular jurors for said term," cannot avail appellants. It clearly appears from the record that the jury which tried the case was in all respects drawn and impanelled according to the statute, and the defendants were in no degree prejudiced by the mere verbal inaccuracy of the clerk. The discrepancy with regard to the name of juror Stanley was not ground for quashing the *venire*. 3 Brick. Dig. 204. §. 168. The motion to quash, whether well taken or not, abstractly considered, came too late.—*James v. State*, 53 Ala. 380. The evidence of silence on the part of defendants, when silence was inconsistent with innocence, was properly admitted.— *Campbell v. State*, 55 Ala. 80. Conspiracy having been shown, the statement of Scarborough was competent regardless of the presence and silence of the others.—*Martin v. State*, 28 Ala. 71 ; *Johnson v. State*, 29 Ala. 62 ; *Scott v. State*, 30 Ala. 503 ; *McAnally v. State*, 74 Ala. 9. The charge given at the instance of the solicitor correctly states the law.— *Raiford v. State*, 59 Ala. 106 ; *Hughes v. State*, 75 Ala. 31. Charges 1, 2 and 3, requested by the defendant, Scarborough, fail to negative aggression on his part, or safe and convenient means of escape, and authorize a killing when the danger is not present and impending, but merely apprehended, and were properly refused.—*Ford v. The State*, 71 Ala. 385 ; *DeArman v. State*, 71 Ala. 351 ; *Baker v. State*, at present term ; *Dolon v. State*, at present term. The 4th charge requested by Scarborough, authorized acquittal on the ground of drunkenness without reference to degree of drunkenness, or whether to insensibility, and is bad for the further reason that it predicates incapacity to commit " any felony " or inability to entertain the *specific intent* necessary in some, but not all felonies.—*Tidwell v. The State*, 70 Ala. 39 ; *Ford v. The State, supra*. Charge 1, requested by John Williams, is bad because it would require a conspiracy to be shown by evidence of an *expressed* understanding, and because it is in conflict with the rule that though no conspiracy be proved and a defendant be not shown to have participated physically in the fatal act, yet if he is present at and gives encouragement to the act, he is guilty as a principal. The 2d charge asked by Williams would have denied the right of the jury to consider evidence of the conspiracy, and was prop-

erly refused.—*McAnally v. The State*, 74 Ala. 9. There was no evidence in this case of any intent or conspiracy, other than to take the life of the deceased ; charge the 3d by Williams is therefore abstract. This charge violates the well established rule, that each conspirator is responsible for whatever results may follow an attempt to further a common criminal purpose, even though these results be other and more criminal than those originally intended. *Brennan v. People*, 15 Ill. 512 ; 8 Clarke, (Iowa), 478 ; *Miller v. State*, 25 Wis. 384. The charges requested by these other defendants will be found objectionable for one or another of the reasons assigned above, against the charges of Scarborough & Williams.

SOMERVILLE, J.—The question most pressed on our attention, and the one of controlling influence on the merits of this case, is raised by the first charge given by the court at the instance of the State. This charge asserts, in substance, that if the defendants all entered into a conspiracy to *assault and beat*, or to kill the deceased, and in pursuance of such common design, one of said defendants did kill deceased by shooting him with a pistol, *in his own house*, and not in self-defense, the other defendants then being *near at hand*, all of the defendants would be guilty of murder. Other charges asserting the converse of this were requested by the defendant and refused by the court.

It must be kept in mind that the defendants are not indicted in this case merely for a conspiracy to commit murder, but as principals in the crime of murder itself. Nor is the case complicated by any inquiry as to distinctions between accessories before the fact and principals in crime, or principals in the first and second degree, the statutes of this State having, in cases of felony, abolished the common law distinction in this particular, by providing that " all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid or abet in its commission, though not present," are authorized to be indicted, tried, and punished as principals.—Code 1876, § 4802 ; *Hughes v. The State*, 75 Ala. 31.

The general rule is familiar, that where several parties conspire or combine together to commit any unlawful act, each is criminally responsible for the acts of his associates or confederates committed in furtherance or in prosecution of the common design for which they combine.

The point of difficulty arises in applying this general principle, when it is sought to ascertain what particular acts come within, or are departures from the common design or

[Williams *et al.* v. The State.]

plan. It is very clear that one may often be responsible for an act, committed either by himself or by a confederate, which he did not specifically intend to commit. A common example is found in the case, often adjudged, where one, who commits a mere civil trespass by shooting at another's fowls, wantonly or in sport, may be held guilty of manslaughter, when the death of a human being accidentally ensues ; and if his intent was to steal the fowls, then of murder, although he did not specifically intend homicide in either case. So the case is put by Mr. East, if one wilfully, with intent to hurt, throw a *large* stone at another, and by accident kill him, this is murder; but if the stone is *small* and not likely to produce death, it would seem to be manslaughter.—1 East P. C. 257. It is thus an important rule, as we shall more fully show, that the responsibility for incidental and often for accidental results, broadens with the magnitude or heinousness attached to the unlawful act specifically agreed to be perpetrated. This is upon the principle that every one is presumed to intend, and therefore must be held responsible for, the natural and probable consequences of his own acts. It necessarily follows that where one person combines with another to do an unlawful act, he impliedly consents to the use of such means by his confederate as may be necessary or usual in the successful accomplishment of such an act. The more flagrant and vicious the act agreed to be done, the wider is the latitude of the agency impliedly conferred to execute it.

The rule of criminal responsibility, in cases of conspiracy or combination, seems to be, that each is responsible for everything done by his confederates which follows incidentally in the execution of the common design, as one of its probable and natural consequences, even though it was not intended as a part of the original design or common plan. 1 Whart. Cr. Law, (9th Ed.) §§ 220, 214. In other words, the act must be the ordinary and probable effect of the wrongful act specifically agreed on, so that the connection between them may be reasonably apparent, and not a fresh and independent product of the mind of one of the confederates, outside of, or foreign to the common design. Nor must it have been committed by one of the confederates after the explosion of the plot, or the abandonment of the common design, or from causes having no connection with the common object of the conspirators.—1 Bish. Cr. Law (7th Ed.) §§ 640, 641 ; 1 Whart. Cr. Law, § 397 ; *Lamb v. The People*, 96 Ill. 73, (s. c. 2 Crim. Law Mag. 472) ; *Ruloff v. The People*, 45 N. Y. 213 ; *Thompson v. The State*, 25 Ala. 41 ; *Frank v. The State*, 27 Ala. 37.

The application of the rule to cases of homicide is made in 1 Hale P. C. 441, where it is said : . "If divers persons come in one company to do an unlawful thing, as to kill, rob or *beat a man*, or to commit a riot, or to do any other trespass, and one of them in doing thereof kill a man, this shall be adjudged murder in them all that are present of that party abetting him and consenting to the act or ready to aid him, although they did but look on." And the following language is used in 1 East P. C. 257 : "Where divers persons resolve generally to resist all opposers in the commission of any breach of the peace, and to execute it with violence, or in such a manner as naturally tends to raise tumults and affrays ; as by committing a violent disseizen with great numbers, or *going to beat a man*, or rob a park, or standing in opposition to the sheriff's posse, they must at their peril abide the result of their actions."

It has long been a rule of law, now often repeated by the text writers, that "if A command B to beat C, so as to inflict grievous bodily harm, and he beat C so that C dies, A is an accessory to the murder, if the offense be murder in B." 1 Whart. Cr. Law, § 225 ; 1 Hale, 617. . The line of distinction here is narrow, as appears from the proposition announced by Mr. Bishop, in support of which there are many adjudged cases. "If," he says, "two combine to fight a third with *fists*, and death accidentally results from a blow inflicted by one, the other also is responsible for the homicide. But if one resorts to a *deadly weapon* without the other's knowledge or consent, he only is thus liable."—1 Bish. Cr. Law (7th Ed.) 637 ; *Reg. v. Caton*, 12 Cox C. C. 624 ; (s. c. 10 Eng. Rep. 506.) The implied agreement here is evidently not to resort to the use of a deadly weapon, and the use of such weapon is therefore foreign to the contemplation of the parties, and a departure from the common design. It is said by some of the standard authors that if the specific act agreed to be done was *malum in se*, the responsibility for unintended results would embrace acts arising from misfortune or chance ; but otherwise if such specific act was *malum prohibitum* merely, or lawful.—1 Bish. Cr. Law (7th Ed.), § 331 ; Archbold's New Crim. Proc. 9. In some cases the distinction is taken that where persons unlawfully conspire to commit a trespass only, to make all the confederates guilty of murder, the death must ensue in the prosecution of the design. If the unlawful act be a felony, or be more than a trespass, it will be murder in all, " although the death happened collaterally, or beside the original design."—*State v. Shelledy*, 8 Clark (Iowa), 478. In another recent case the rule was announced that "if the unlawful act agreed to be

[Williams *et al.* v. The State.]

done is dangerous, or homicidal in its character, or if its accomplishment will necessarily or probably require the use of force and violence, which may result in the taking of life unlawfully, every party to such agreement will be held criminally liable for whatever any of his co-conspirators may do in furtherance of the common design, whether he is present or not."—*Lamb v. The People*, 96 Ill. 73, *supra.*

The question in this case then would seem to be, whether, if five or six men combine together to invade a man's household, and they go there armed with deadly weapons for the purpose of attacking and beating him, and in furtherance of this common design, all of the confederates being present, or near at hand, one of them gets into a difficulty with their common adversary and kills him, all may not be guilty of murder, although they did not all entertain a purpose to kill? The question, we think, must be answered in the affirmative, in the light of both principle and authority. Every man has the right to defend his house against every unlawful invasion, and to defend his person, when within it, against every and all violence without the necessity of retreat. The experience of mankind shows that very few men will fail to respond to instinct by exercising this right, to the extent even of killing an assailant if necessary. When a mob, conspiring together unlawfully, go to a man's house to do any serious violence to his person, especially in the night time as here, they can expect nothing else than to meet with armed opposition, and the inference is not unreasonable that they intend nothing less than to oppose force to force, in the furtherance of their design. The natural and probable consequence of this is homicide—either of one or more of the assailants or of the party thus assailed, and such homicide, when committed by any one of the conspirators, can be nothing less than murder in all who combine to commit the unlawful act of violence, especially if they be near at hand inciting, procuring, or encouraging the furtherance of the act of assault and battery.

The adjudged cases sustain this view, some of which we proceed to cite.

In *Peden v. The State*, 61 Miss. 268, the precise question was presented and decided. There several persons conspired together to take one Walker from his house and whip him. He was accordingly taken from his bed and severely beaten, and in executing this design one of the confederates struck him a fatal blow with a spade from which he died. It was held that all were guilty of murder, whether they entertained a purpose to kill Walker or not.

In *Brennan v. The People*, 15 Ill. 512, where a large num-

[Williams *et al.* v. The State.]

ber of defendants were indicted for the murder of one Story, instructions were asked which required the jury to acquit the prisoners unless they actually participated in the killing of deceased, or unless the killing happened in pursuance of a common design, on the part of the prisoners and those doing the act, to take his life. The court said: "Such is not the law. The prisoners may be guilty of murder, although they neither took part in the killing, nor assented to any arrangement having for its object the death of Story. It is sufficient that they combine with those committing the deed to do an unlawful act, such as to *beat or rob* Story; and that he was killed in the attempt to execute the common purpose. If several persons conspire to do an unlawful act, and death happens in the prosecution of the common object, all are alike guilty of the homicide."

In *Shelledy's Case*, 8 Clarke (Iowa), 478, the defendants had taken one Wilkinson, and after tying him with a rope, put him in a carriage, started with him to the woods, making menaces of violence against him, by which he was induced to jump from the vehicle into a river, and was drowned, no effort being made to rescue him. It was held that all the confederates might be properly convicted of murder, although some of them designed only to commit personal violence on the deceased, without intending to kill him.

In *Miller v. The State*, 25 Wis. 384, the wife of the defendant, without fear or compulsion from him, agreed with him to go to the store of one Wright, the deceased, and to rob it, the husband telling her, and she believing, that he did not intend to kill Wright, but only to knock him down so as to stun him, in order to consummate the robbery. They went together, and the husband in carrying out the plan gave the deceased a fatal blow, the wife giving no intentional assistance. A charge was sustained which justified the jury under this state of facts, in finding her guilty of murder.

In *Miller v. The State*, 15 Tex. Ct. Ap. 125, the evidence tended to show that the defendant and two others by the name of Harden acted together in provoking a contest with deceased, one Linson, either with the purpose of killing him, or of doing him some serious bodily harm, and in pursuance of this common design one of the Hardens, in the presence of the defendant, shot and killed deceased. It was held that if the jury believed the evidence, they could lawfully find the defendant guilty as a principal in the act of murder.

In *Ferguson v. The State*, 32 Ga. 658, the defendant was

convicted of robbery. The facts were, that having effected escape from his own cell in a jail, the defendant had broken the locks off the doors of other cells, the inmates of which, so soon as the jailor made his appearance, set upon, bound and blindfolded him, and then some of them proceeded to rob him. The trial court refused to charge the jury that the prisoner could not be convicted of robbery if he was unaware of the intent to rob, but that it was sufficient if the prisoner conspired with the others to effect an escape, and that the robbery charged was in furtherance of this design, the prisoner being near enough at hand to render assistance to those actually committing the felony.

Under the foregoing authorities we are of opinion that the rulings of the court, on this particular branch of the law, were free from all error.

The case of *The State v. Absence*, 4 Por. 397, is not in conflict with this view. There the defendant had participated in an assault and battery committed in a personal rencontre between one Weaver and one Mosely, only so far as *to push* the former towards the latter for the purpose of causing a fight between them. A fight ensued, in the progress of which Mosely committed mayhem on the person of Weaver by biting off his right ear, which was a felony. A charge was held erroneous that under this state of facts Absence would necessarily be guilty of mayhem without participation in the felonious intent of Moseley. It was, however, left an open question in that case whether, if two or more persons should agree together to do some great bodily harm to another, and one of them committed mayhem on the party beaten, all who are present would not be guilty of the mayhem. It may be remarked that Mr. Bishop criticises this case as doubtful, and Mr. Wharton thinks it erroneous.—1 Bish. Cr. Law (7th Ed.), § 635; 1 Whart. Cr. Law (9th Ed.), § 214, *note* 1.

2. There is no error in the refusal of the court to quash the *venire*. The name of *R. C.* Stanley appeared on the original list of jurors. On the copy served on the defendant the name was written *D. C.* Stanley. This was a mere mistake or discrepancy in the name of the person summoned, and, under the provisions of the statute, was no sufficient cause to quash the *venire* "unless the court, in its discretion, was of opinion that the ends of justice so required."—Code, 1876, § 4876; *Jackson v. The State*, 76 Ala. 26; *Hubbard v. The State*, 72 Ala. 164; 3 Brick. Dig. p. 264, § 168.

3. The objection, moreover, came too late, not having been interposed until the entire jury had been drawn, im-

[Williams *et al.* v. The State.]

panelled, and accepted by the State, and was offered for acceptance to the defendants.

4. The declaration made by the defendant, Shade Scarborough, in the presence and hearing of the other co-defendants, directly implicating them as accessories in the alleged murder of the deceased, was admissible, in our judgment, against all of the defendants. It may be that the jury should have exercised great caution in drawing any implications of guilt from the silence of the other defendants, but this went only to the weight of the evidence. The charge embodied in this declaration, that the other defendants had instigated him to commit the crime, was one naturally calling for contradiction under the circumstances, if it was in fact untrue.—*Campbell v. The State*, 55 Ala. 0; Stephen's Dig. Law Ev., Art. 4, p. 10.

5. Conceding, moreover, that this evidence was inadmissible against all the defendants, it was certainly admissible against Scarborough, the one making the declaration, and the remedy was not a motion to entirely exclude it from the jury, but the settled practice is a request for instructions limiting its effect, so as to confine the influence of the evidence only to the defendant against whom it was admissible.—*Lewis v. Lee County*, 66 Ala. 480 ; 1 Brick. Dig. p. 810, §§ 98-99.

6. The fourth charge requested by the defendant Scarborough was clearly erroneous, and was properly refused by the court. There is no evidence tending to show that, at the time of the killing, he was so drunk as to be incapable of understanding the nature of the act committed by him. Drunkenness, moreover, would not entirely excuse the crime. It could only operate at most to reduce the grade of the homicide from murder to manslaughter by rebutting the existence of malice aforethought in the mind of the perpetrator.—*Ford v. The State*, 71 Ala. 385.

The other charges requested by the defendant, Scarborough, were manifestly erroneous, and their refusal was without error.

7. The first charge requested by the defendant, John Williams, was susceptible of the interpretation that the defendants must have entered into an express agreement to do an unlawful act before they would be guilty of a conspiracy, thus ignoring the fact, which the evidence tends to prove, that the defendant, Williams, and others were near at hand encouraging the perpetration of the homicide, either by abetting the act of killing, or inciting the unlawful acts which immediately led to it. The charge was therefore misleading, if not erroneous, and was properly refused.

[Dolan v. The State.]

8. If the evidence *prima facie* established a combination or conspiracy to invade the premises of deceased, and to beat or kill him, the acts and declarations of each of the confederates, done or made in furtherance of the common design, were the acts and declarations of all. The eleventh charge, requested on behalf of the defendant, John Williams, was repugnant to this principle, and its refusal was without error.

9. The twelfth charge requested by the same defendant, and the third charge requested by the defendant, Dennis Williams, were abstract, there being no evidence to support either of them. Each was rightly refused by the trial court.

We have closely examined the record in this case, and are constrained to say that we find no error in it. The judgment of the court is accordingly affirmed, as to each of the several defendants. And the day appointed by the circuit court for the execution of the sentence of death upon one of the defendants, Shade Scarborough, having passed, it is accordingly ordered and adjudged by this court that Friday, the eleventh day of March, next A. D. 1887, be fixed for the execution of said sentence, and on that day the sheriff of Barbour county will proceed, in all respects, in the manner provided by statute, to execute the sentence of death upon the said Shade Scarborough by hanging him by the neck until he is dead.

Affirmed.

### Indictment for Murder.

