[Hall v. State.]

# Hall v. The State.

*Indictment for Murder.*

1. *Discontinuance, and waiver thereof; abolition of county, and reëstablishment under new name, after change of venue.* — The prosecution in this case having been commenced in Cherokee, and transferred, by change of venue, to Baine county; which latter county was afterwards abolished by an ordinance of the constitutional convention, and subsequently reëstablished, by statute, under the name of Etowah county, — *held*, on the authority of a former decision in the case (*Ex parte Hall*, 47 Ala. 675–85), that although the prosecution was discontinued by the abolition of Baine county, the discontinuance was waived by the defendant's continued appearance for several successive terms without objection, and that the cause was properly pending in the circuit court of Etowah.

2. *Objections to venire.* — The *venire* in a criminal case cannot be quashed on motion (Rev. Code, § 4175), because of mistakes in the names of the persons summoned as jurors, or discrepancies in their names between it and the copy served on the prisoner.

3. *Competency of juror.* — A person summoned as a juror, who states that, "from what he had heard, he did not know whether he could give the defendant or the State justice, but supposed he could," cannot be said to have "a fixed opinion which would bias his verdict" (Rev. Code, § 4180), and is competent as a juror.

4. *Calling jurors.* — It is discretionary with the court, whether the names of the jurors, as they are drawn, shall be called only from the clerk's desk, or from the outer door of the court-house; and this discretion is not revisable on error.

5. *Clerk's certificate to transcript, on change of venue.* — It is not necessary that the clerk's certificate, appended to the transcript on a change of venue, should be under his seal, private or official; and if the certificate is otherwise defective, its defects may be supplied by the testimony of the clerk.

6. *Recalling witness.* — Ordinarily, it is discretionary with the court to permit a witness to be recalled after his examination has been concluded, and the exercise of this discretion is not revisable; but, where the cross-examination of a witness has been only temporarily suspended, with the knowledge and implied assent of the court and the prosecuting officer, for the purpose of preparing questions by which to lay a predicate for impeaching him, it is error for the court to refuse to permit him to be recalled and the cross-examination continued.

7. *Relevancy of acts of third persons, not in defendant's presence.* — The conduct and acts of third persons, not in the defendant's presence, on which an unfair argument to the jury might be founded, are not competent evidence against him, unless their relevancy is affirmatively shown.

8. *Sustaining credibility of witness.* — The credibility of a witness cannot be supported by evidence showing that he was advised by a third person, not in the defendant's presence, not to attend court unless he told the truth.

9. *Proof of improper intimacy between man and woman; relevancy of evidence in rebuttal.* — The prosecution having proved, for the purpose of showing an improper intimacy between the defendant and one of the female witnesses, that they were "seen at church one night whispering together in the back part of the congregation," the defendant may prove, in rebuttal, "that other men and women in the crowd were whispering together."

FROM the Circuit Court of Etowah.

Tried before the Hon. WM. H. SMITH.

The prisoner in this case, William M. Hall, was indicted for the murder of his wife in August, 1865. The indictment was found at the October term, 1865, of the circuit court of Cherokee county; and the cause was transferred, on the defendant's application, at the October term, 1867, to the circuit court of Baine county. On the 3d November, 1867, an ordi-

[Hall v. State.]

nance was adopted by the constitutional convention, then in session in Montgomery, by which Baine county was abolished, and it was declared " that the territory and jurisdiction of said county is restored to the counties out of which it was formed, as the same existed before the formation of said new county." On the 1st December, 1868, an act was passed by the general assembly, by which the said ordinance was repealed, and it was declared that said county should be called Etowah instead of Baine. At the October term, 1871, of the circuit court of Etowah, the defendant moved to strike the cause from the docket, on the ground that it had been discontinued, and that said court had no jurisdiction of it. The motion was overruled, and the defendant excepted; and on this bill of exceptions he applied by petition to this court, at its January term, 1872, for a *mandamus* to said circuit court, to compel said court to strike said cause from the docket. The application was overruled and refused, on the ground that the defendant, by his continued presence in court for several terms afterwards, had waived the discontinuance caused by the abolition of the county of Baine. See the case reported in 47 Ala. 675–85.

At the March term of said court, 1874, as the bill of exceptions shows, when the defendant was called, he objected to being put on his trial, and protested against the court taking any action against him on the indictment, and insisted that the prosecution had been discontinued and that the court had no jurisdiction, and moved to strike the cause from the docket. The court overruled these several motions, and proceeded to arraign the defendant; to which rulings and decisions he excepted. On the trial, the defendant moved to quash the *venire*, " on the ground that he had not been served with the names of one hundred jurors who had been summoned in the case; and it was made to appear to the court that the *venire* contained the name of *W. H. Pickens* as a juror, and that *Henry W. Pickens* had been summoned by the sheriff and answered to the call; and because the copy served on the defendant contains the name of *F. M. King*, instead of *F. W. King*, as in the original *venire;* and because the christian names of some of the jurors were not set out in full, and the names of several of the jurors in the *venire* were incorrectly or differently set out in the copy served on the defendant and his counsel." The court overruled the motion, and the defendant excepted.

" The name of Ephraim Little was drawn as a juror, and he was examined by the court, and answered, among other things, that, from what he had heard, he did not know whether he could give the defendant or the State justice, but he supposed he could. The court pronounced him a competent juror, and, the State having accepted him, put him on the defendant; to

which the defendant objected and excepted. The name of another juror was called within the bar in the court-room, and he did not answer. The court then ordered another name to be drawn; to which the defendant objected, and asked that the absent juror be called at the outer door of the court-house, as such had always been the practice of the courts heretofore, in said county, as was admitted. The court refused to allow any juror to be called at the outer door, and ordered the drawing to proceed; to which rulings the defendant objected and excepted."

"The jury being empanelled, the solicitor offered to read to the jury the indictment contained in the transcript certified by the clerk of the circuit court of Cherokee; to which the defendant objected, on the ground that said transcript was not properly or sufficiently certified, and because the seal of the court was not attached to it. Thereupon, against the defendant's objection, the State introduced one Samuel C. Ward as a witness, who was the clerk of the circuit court of Cherokee county at the time said transcript was made out, and who testified, that he made out said transcript from the original, and that said transcript is, to the best of his recollection, a correct copy from the original record of said circuit court of Cherokee in this case. The court overruled the defendant's objections, and permitted the said evidence to be made; and the defendant excepted."

During the trial, the defendant having pleaded not guilty, the State introduced one Mary Campbell (formerly Taylor) as a witness, and examined her; and the defendant, on cross-examination, sought to impeach her credibility, by showing that an improper intimacy existed between her and the defendant, and by questions as to her statements on the preliminary examination of the defendant before a justice of the peace, stating that the questions were asked with a view to impeaching her. "Defendant's counsel then stated, that the witness might stand aside for the present; and that he would want to recall her after a while, for the purpose of laying other predicates for contradicting her, which were not then written out. No objection or reply was made to this statement, either by the court, or by the counsel for the State; and no notice was given by the State's counsel that said witness was, or would be, dismissed by the State. On a subsequent day during the trial, the defendant proposed to recall said witness, for the purpose of laying other predicates to impeach her; to which the counsel for the State objected, on the ground that she had already been examined, cross-examined, rebutted, and dismissed. There was no evidence that said witness had been notified that she was dismissed from further attendance in the case; and it was stated by defendant's counsel, and admitted, that she was still

[Hall *v.* State.]

in attendance, and within call of the court. The court refused to allow said witness to be recalled for the purpose stated, and the defendant excepted."

Miss C. McLarnier, a witness for the State, having stated that she went to the defendant's house on the morning after the murder, and remained there all day, was asked by the counsel for the State, "if she saw defendant's mother, any time that day, go up-stairs, and bring down anything, to say so, and to describe what she saw." The defendant objected to this question, " as seeking to elicit illegal and irrelevant evidence ; " but the court overruled his objection, and permitted the question to be asked, and the defendant excepted. " The witness answered, that the defendant's mother, late in the evening, just before she went home, went up-stairs, and came down crying in a little while ; that she went up to her daughter, and whispered to her, and they both then went up-stairs again ; that they came down again directly, and the old lady had under her arm a bundle about as large as a garment, which was rolled up, and looked like cloth ; and that she went towards the gate, and went off." The defendant objected to this evidence, and reserved an exception to its admission.

" Said witness testified, among other things, on direct examination, to acts of intimacy between the defendant and Mary Campbell ; that on one occasion, at church at night, at a revival where there was much excitement, defendant and said Mary sat together in the back part of the congregation, and were whispering together. The defendant asked said witness, on cross-examination, if there were not other men and women in the crowd also whispering together." The court sustained an objection to this question, and the defendant excepted.

One Harry Davis was asked by the State, on cross-examination, "for a conversation between him and said Mary Campbell, some time (but not long) before the present term of the court ; to which the defendant objected, because it was not shown that he was present, or in any way connected with the same." The court overruled the objection, and allowed the witness to testify, " that he told said Mary it was best for her not to come to court, unless she would swear the truth ; which conversation was brought about by rumors that he had heard, and the truth of which he desired to know." To the admission of this evidence, also, the defendant excepted.

Numerous other exceptions were reserved by the defendant, which require no particular notice ; and all the matters of exception are now assigned as error.

James A. Reeves, M. J. Turnley & Son, and Rice, Jones & Wiley, for the prisoner.
Vol. li.

[Hall v. State.]

BEN. GARDNER, Attorney General, for the State.

BRICKELL, J. — The decision rendered in this case, at the January term, 1872, on the application of the prisoner for a writ of *mandamus* to the judge of the circuit court of Etowah, commanding him to strike the cause from the docket of that court, we are compelled to regard as conclusively adjudicating that the cause is properly and legally pending in that court; that the court has, and must entertain, jurisdiction of it. We are unwilling to review or disturb that decision. *Ex parte Hall*, 47 Ala. 679.

2. The court properly overruled the motion of the defendant to quash the *venire* because of mistakes in the names of persons summoned as jurors, either in the *venire* or in the lists delivered to him. The statute expressly declares that such mistakes shall not be deemed sufficient cause to quash the *venire*. R. C. § 4175. The purpose of the statute was, to avoid all such objections, which, if they ever had any force, were more often resorted to for the purpose of delay than to advance the administration of justice.

3. The statute disqualifies a juror, summoned for the trial of a criminal cause, if he has a fixed opinion as to the guilt or innocence of the defendant, which would bias his verdict. Whether he has such an opinion, is to be ascertained by his examination only. R. C. §§ 4180-1. The examination of the juror Little did not disclose that he had any fixed opinion as to the guilt or innocence of the defendant. He merely doubted whether he could divest himself of opinions formed from what he had heard, but believed he could. The opinion of the juror seems to have been formed on mere rumor, not from information derived from persons having knowledge of the facts attending the homicide with which the defendant is charged. It was not, in any sense, a *fixed opinion*, but an impression, capable of removal, if the facts were variant from the report which had reached the juror, or the law, as given in charge by the court, should compel him to view them in a different light.

4. It was a matter of discretion with the court whether the names of the jurors, as drawn, should be called only from the clerk's desk, or from the outer door of the court-house. It was the duty of all summoned as jurors to be in the presence of the court, and not to depart it without leave. The progress of a trial would be greatly embarrassed, if the court was compelled to pause, as the name of each juror in a capital case was drawn, until by a call from the sheriff at the outer door it was ascertained whether he would respond or not.

5. In *Bishop* v. *State* (30 Ala. 34), it was decided that, on a change of venue, in a criminal case, it is not necessary that the

clerk's certificate, appended to the transcript, should be under his seal, private or official. The certificate of the clerk that the transcript contains a true and correct transcript of the organization of the grand jury, the indictment, and the orders of the court, was a substantial compliance with the statute ; and the evidence of the clerk was unnecessary. *Scott* v. *State*, 37 Ala. 117. We do not doubt, that if the certificate had been deficient, its deficiencies could have been supplied, and were supplied by the evidence of the clerk.

6. The court erred in refusing to permit the defendant to recall the witness, Mary Campbell, and to reëxamine her with a view to her contradiction. Questions of this character are, ordinarily, within the sound discretion of the court, and its action thereon is not revisable. But in this case the defendant suspended his cross-examination, to prepare questions laying a proper predicate for her contradiction. This was announced to the court, and not being objected to by the court or the State, the defendant directed the witness to stand aside " for the present." If to this course an objection had been made, the defendant could have continued his cross-examination, and laid a proper predicate for the impeachment of the witness. The assent of the court, and of the State, to the suspension of the cross-examination, cannot be allowed to deprive him of the right of impeachment. He had the right to recall the witness, and continue his cross-examination, with the view of her impeachment. If the cross-examination had been concluded, it would have been discretionary with the court, whether the witness should have been recalled, and the cross-examination renewed. But it had not been concluded. It was temporarily suspended, without objection from, and, in consequence, with the implied assent of, the court and the solicitor. It would be a wrong, which might produce grave injury to the defendant, to withhold from him the right of continuing subsequently the cross-examination.

7. The evidence of Miss McLarnier, as to the acts of the defendant's mother, in his absence, was wholly irrelevant. We cannot discover, from the bill of exceptions, that it was calculated to have the least influence on the minds of the jury. It was entitled to none legally. It possibly may have been made the basis on which to found an unfair argument against the defendant, and to mislead the jury. What it was the mother of defendant had under her arm, and what was the subject of the whispering between her and her daughter, was all mere matter of suspicion and remote conjecture, which a jury should not be encouraged to indulge in a criminal case of this gravity.

8. The conversation had by the witness Harry Davis, with the witness Mary Taylor, should not have been received in evi-

[Faulk v. State.]

dence. It was not admissible to support the credibility of Mrs. Taylor, and we can see no other purpose for its introduction.

9. The State, for the purpose of showing improper intimacy between the defendant and Mary Campbell, now Mary Taylor, was permitted to prove that they were seen at church sitting at the back part of the congregation, whispering. To repel any unfavorable inference arising from this evidence, the defendant offered to prove that other men and women in the crowd were whispering together. This evidence should have been received. It had a tendency to repel the inference which might be drawn from the evidence of the State.

In the remaining rulings of the court, either in the admission or rejection of evidence, or in the charge given the jury, we are not able to discover any error.

For the errors we have pointed out, the judgment is reversed, and the cause remanded. The defendant must remain in custody until discharged by due course of law.