[Roberts v. The State.]

# Roberts *v.* The State.

*Indictment for Murder.*

1. *Grand jurors in Monroe and Wilcox, under special statute.*—Under the special statute approved February 13th, 1879 (Session Acts 1878–9, p. 204), the number of persons required to be summoned as grand jurors, in Monroe and other counties therein named, was reduced to fifteen; and the record in this case shows with sufficient certainty, as held at the last term, on a former appeal, that the grand jury was organized with twelve of the persons originally summoned, and three others from the six talesmen.

2. *Objection to venire, on account of disqualification of persons summoned as jurors.*—When the sheriff summons disqualified persons as jurors on a special *venire,* this is no ground for quashing the *venire,* though the disqualification is good ground of challenge for cause; nor would a different rule prevail, if the disqualification was known to the sheriff when he summoned them, *unless* the record shows that, without the disqualified persons, there was not a sufficient number of good and lawful men, from whom an impartial jury might be chosen.

3. *Summons of less persons than named in venire.*—If the order of the court, in a capital case, requires the sheriff to summon one hundred persons as special jurors (Code, § 4874), and he summons only ninety-nine, this is good ground for quashing the *venire;* and though the error was caused by the repetition of one name, making the apparent number one hundred, this is not a "mistake in the name of a person summoned as a juror," which is declared to be "not sufficient cause to quash the *venire*" (Code, § 4876), but is a failure on the part of the sheriff to comply with a judicial order, which confers substantial rights on the defendant.

4. *Challenge of juror for cause; when interposed.*—When a disqualified person is accepted as a juror, but his disqualification was not known at the time, or was concealed, without lack of diligence to discover it on the part of the objector, he may be challenged for cause at any time before he is sworn; but the challenge comes too late after he has been sworn, unless the disqualification originated after he was sworn.

5. *Oath of petit jury.*—In a criminal case, if the judgment entry recites, simply, that the jury "was duly sworn," or, "was sworn according to law," not setting out the oath, this is sufficient, and it is the safer practice to pursue.

6. *Objection to question and answer.*—The refusal to allow a question to be asked, is not a reversible error, when the record does not show what was proposed to be proved by the answer, and the question is so general that the court can not see that the answer, if allowed, would have been relevant, material, or beneficial to the party asking the question.

7. *Declarations of party; admissibility of.*—The declarations of the defendant, in exculpation of his conduct, are not competent evidence for him, unless they constitute a part of the *res gestæ.*

8. *Evidence of deceased witness.*—The testimony of a witness since deceased, taken on the preliminary examination of the defendant before a magistrate, and by him committed to writing at the time, though

[Roberts v. The State.]

not signed by the witness, is competent evidence against the defendant on his trial, on proof of its correctness by the magistrate.

9. *Previous threats by deceased against defendant.*—Previous threats made by the deceased, however violent, "will not, of themselves, excuse the killing, but there must have been some words, or overt act, at the time, clearly indicative of a present purpose to do the defendant some injury."

FROM the Circuit Court of Monroe.

Tried before the Hon. H. T. TOULMIN.

The indictment in this case charged, in a single count, that the defendant, Charles Roberts, "unlawfully and with malice aforethought killed Duncan Rankin, by shooting him with a gun; against the peace," &c. On his first trial under this indictment, the defendant was convicted of murder in the first degree, and sentenced to imprisonment in the penitentiary for life ; but the judgment was reversed by this court, on a bill of exceptions reserved by him, and the cause was remanded, as shown by the opinion delivered at the last term, *ante*, pp. 156–66. On the second trial, as the bill of exceptions in the present record shows, the defendant moved to quash the indictment, on account of defects in the organization of the grand jury ; and, in support of this motion, read in evidence, from the records of the court, the minute-entries relating to the formation of the grand jury, in the same words as shown on the former trial ; and the State introduced as a witness the clerk of the court, who testified in explanation of said minute-entry as on the former trial.—See the report of the case on the appeal at the last term (*ante*, pp. 156-66), where the facts are stated at length. The defendant objected to the testimony of the clerk, and reserved an exception to its admission ; and he also excepted to the overruling of his motion to quash the indictment.

Before entering on the trial, the defendant moved to quash the special *venire* of jurors summoned for his trial, on these grounds: "1st, that said *venire* is not a fair and impartial one ; 2d, that near kin of the deceased were summoned on said *venire ;* 3d, that four persons who, as jurors on the former trial, had tried the case, were summoned on said *venire ;* 4th, that a witness in the case for the prosecution, and a member of the grand jury by which the indictment was found, were summoned on said *venire ;* 5th, that one hundred persons, including the regular jurors for the week, are not contained in said *venire*, and were not served on this defendant, as required by the order of the court made on a previous day of this term, only ninety-nine names being contained in said *venire* and list." In support of this motion, the defendant offered in evidence the *venire,* and the copy thereof which had been served on him ; each of which pur-

[Roberts v. The State.]

ported to contain the names of one hundred persons, but really contained only ninety-nine, the name of R. W. Mosely being twice repeated; and he also submitted his own affidavit, mentioning the names of the persons alleged to be incompetent to serve as jurors, specifying the cause of incompetency in each case, and averring that such incompetency was known to the sheriff when he summoned them. On the part of the State, an affidavit of the sheriff was submitted, explaining the repetition of Mosely's name by inadvertence, he being a regular juror for the week, and also summoned as a special juror. "This was all the evidence before the court, on said motion to quash the *venire*; and thereupon the court overruled the motion, and the defendant excepted."

"In the course of impanelling the jury," as the bill of exceptions further recites, "the name of one Seymore, one of said *venire*, was drawn from the hat, and he was sworn to answer questions, touching his qualifications as a juror; and he answered, that he had not a fixed opinion against capital or penitentiary punishment, but would not convict on circumstantial evidence unless it was very strong. The State waived any objection on that ground, and accepted said Seymore as a juror, and the defendant also accepted him; and thereupon the clerk handed him the Bible, and he took it in his right hand, while the clerk repeated the oath to him; and after the oath had been repeated to him, and before he had kissed the book, said Seymore said, "*Yes, to the best of my ability, but I will not convict capitally,*" and put down the book. Thereupon, on behalf of the State, the solicitor asked said Seymore what he meant by that; and Seymore replied, that he was opposed to capital convictions, especially on circumstantial evidence; and on further examination, both by the solicitor and the defendant's counsel, he said, that he would do the best he could. The State then challenged said Seymore for cause, peremptorily, and the court allowed the challenge, and ordered said Seymore to stand aside;" to which action and ruling of the court the defendant duly objected and excepted.

"Evidence before the jury tended to show that said Rankin, the deceased, was killed in July, 1879, on a Monday evening about five o'clock; that he was shot by the defendant, from the store of Slaughter & Rives, and through a window that was at the time shut down; that defendant was not seen by any one at the time, but the evidence tended to show that some time after the killing, said that 'he did it—that he had made up his mind two or three (?) before to kill the deceased, and would have shot him before, but other persons were in the way, and he was afraid he might shoot them'; and he said that he was afraid of the deceased. The evidence

showed, also, that the deceased, when he was shot, was some fifteen or twenty steps from the store, and was going towards it; that he was in his shirt sleeves, was unarmed, and saying nothing at the time; that he had been in company with several persons, some fifty or sixty yards from the store, a few minutes before the killing, and told one Loughry, who was a maker or repairer of watches and clocks, that he wanted him to repair his clock, that it was over at the store of Slaughter & Rives, and he would go and get it; and that he immediately walked in the direction of the store, and was shot down as above stated. The evidence tended to show, also, that the deceased was calm and unexcited at the time; also, that for some months before the killing, and up to about one week before, the defendant had lived in the same house with the deceased and his wife, who had separated some few weeks before the killing; that on the day before the killing, and the Saturday before, the deceased had made some threats against the defendant, and seemed to be somewhat excited. Evidence before the jury tended to show, also, that the defendant was a watch-mender, and carried on his business in the back part of the store of Slaughter & Rives, and was in charge of said store on that day; that the deceased had been to said store three or four times on the day of the killing; that a loaded gun was usually kept in the back part of the store; and that the deceased, on one of the occasions when he came into the store on that day, inquired for kerosene oil," and looked about the store, behind barrels &c., as if looking for kerosene or something else. In this connection, defendant asked Charles Slaughter, the clerk in the store of whom the inquiry was made by the deceased, "Did you, or not, tell the defendant that you believed Rankin was looking for the gun?" The court sustained an objection to this question, and the defendant excepted. Said witness having stated that he saw Rankin, on the morning of the day on which the killing occurred, coming towards the store with his sleeves rolled up, defendant asked him this question, "Did the defendant call your attention to the fact that Rankin was coming towards the store with his sleeves rolled up?" The court sustained an objection to this question, and the defendant excepted.

"It was shown in evidence also, by the testimony of one J. M. Slaughter, that said Rankin (deceased) told him, on the Saturday before the killing, that if defendant did not leave that neighborhood, and that damned quick, he would kill him; that said Rankin, immediately afterwards, stepped to the back part of the store, where the defendant was, and he and defendant stepped out of the back door of the store,

[Roberts v. The State.]

and had a short conversation; that defendant then came
back into the store, looking very pale, and with tears run-
ning down his cheeks; and that witness met him on his re-
turn into the store, and he told witness what Rankin had
said to him. Defendant then asked said witness this ques-
tion, 'State what the defendant told you, on his return into
the store, Rankin had said to him.' The State objected to
this question, and the court sustained the objection; to which
the defendant excepted."

Said J. M. Slaughter further testified, that he went to
Rankin on the Saturday evening when these threats were
made, and remonstrated with him about making such threats,
"and told him that he ought to take it back, and ought to
tell the defendant so; that Rankin replied, 'he would be
damned if he would, but that he (witness) might tell defend-
ant he had withdrawn his threats and would not hurt him;
and that he (witness) then went to defendant, and told him
that Rankin said he had withdrawn the threats and would
not hurt him, and that he (witness) had never known him to
tell a lie. It was further in evidence, by said witness, that
defendant got a horse that Saturday evening, and rode away
from the store, and did not return until the next day;" and
the witness was then asked by defendant these questions:
"Why did defendant leave the store that evening?" "State
the circumstances which caused the defendant to leave the
store that evening?" "State the circumstances within your
knowledge which led the defendant to leave the store that
evening?" To each of these questions an objection was in-
terposed by the State, and was sustained by the court; and
to each of these rulings exceptions were reserved by the de-
fendant. The witness was then asked to state "under what
circumstances did the defendant leave the store that even-
ing;" and answered, "He left there because he was afraid of
Rankin." The court sustained an objection to this answer,
and excluded it; to which the defendant excepted. This
witness having stated, on cross-examination by the State,
that he informed defendant that Rankin had withdrawn his
threats to kill him; he was asked by defendant, "What did
he, defendant, say in reply to this?" The court sustained
an objection to this question, and the defendant excepted.
"It was in evidence, also, that Rankin had gone to his store,
which was shut up, two or more times on the day of the
killing. The defendant asked a witness, what business said
Rankin had been engaged in; to which question the court
sustained an objection by the State, and the defendant ex-
cepted."

"The State offered in evidence the deposition of one J. T.

[Roberts v. The State.]

Locklin, taken on the preliminary examination of the defend-
ant before a magistrate; and the magistrate before whom it
was taken, being introduced as a witness, testified, that said
Locklin was sworn as a witness on said examination, and ex-
amined in the presence of the defendant, and testified as
stated in said deposition; that said deposition was taken
down under his direction, in the words of the witness, and
that said Locklin was dead. Said deposition was not signed
by said Locklin, and the defendant objected to said deposi-
tion going before the jury as evidence, because it was not
signed by said Locklin; which objection the court overruled,
and permitted said deposition to go before the jury as evi-
dence; to which the defendant excepted."

"The court charged the jury, among other things, that
previous threats made by the deceased, howsoever violent,
will not, of themselves, excuse the killing, but there must
have been some words, or overt act, at the time, clearly indi-
cative of a present purpose to do the defendant some injury.
To this charge the defendant excepted."

S. J. CUMMING, for appellant.—1. The motion to quash
the *venire* should have been sustained. In summoning a
special *venire*, in a capital case, the sheriff discharges a com-
mon-law duty, and his acts are subject to all common-law
objections and exceptions. At common law, the power of
selection was confided almost wholly to the sheriff, and there
was no proceeding similar to what is now known as the
making of the jury list. A motion to quash the *venire*, un-
der modern practice, is equivalent to a challenge to the array
at common law; and it includes both the principal cause of
challenge to the array, and challenge to the favor. The de-
fendant's affidavit, which is uncontradicted, except by the
counter affidavit of the sheriff as to the juror Mosely, shows
that the sheriff, willfully and intentionally, summoned as
jurors persons who were not only incompetent, but were
known by him to be disqualified—near kinsmen of the de-
ceased, witnesses for the prosecution, jurors who had tried
the case before, and one of the grand jurors by whom the
indictment was found. This was good ground of challenge
to the array at common law, and is good cause for quashing
the *venire*.—Co. Litt. vol. 1, book 2, sec. 234, p. 154 *b*. An-
other fatal defect in the *venire*, for which it ought to have
been quashed on motion, was that, while the order of the
court required one hundred persons to be summoned, only
ninety-nine were in fact summoned, and included in the list
served on the defendant. This was matter of substance,

[Roberts v. The State.]

and the objection was properly taken. In support of the motion to quash, the following authorities are relied on: 2 Bla. Com. 359–60; 1 Chitty's Crim. Law; 536–40; *Prince v. State,* 2 Stew. & P. 262; *Parsons v. State,* 22 Ala. 50; *Gray v. State,* 55 Ala. 86; *Bell v. State,* 59 Ala. 55; *Nutt v. State,* 63 Ala. 108.

2. The court erred in permitting the juror Seymore to be challenged. He had answered, when examined on his *voir dire,* " that he would not convict on circumstantial evidence, unless it was very strong." If this showed good ground of challenge by the State, the objection was waived by accepting him; and having been also accepted by the defendant, and sworn, he could not be afterwards challenged.—Co. Litt. 158 a;.2 Hawk. P. C. 568; *Williams v. State,* 3 Stew. 454; *State v. Moore,* 2 Ala. 275; *Stalls v. State,* 28 Ala. 25; *Murphy v. State,* 37 Ala. 142; *Lyman v. State,* 45 Ala. 72; *Murray & Bell v. State,* 48 Ala. 675; *Smith v. Smith,* 55 Ala. 1; *Spigener v. State,* 62 Ala. 383; *Rash v. State,* 61 Ala. 90.

3. The oath administered to the jury, as set out in the record, is not a substantial compliance with the requirements of the statute.—*Mitchell v. State,* 58 Ala., where all the cases are cited.

4. The exceptions reserved to rulings on evidence, and to the general charge of the court, are submitted on the facts shown by the record, and the law applicable to the case.

H. C. TOMPKINS, Attorney-General, for the State.—The question raised by the record, as to the organization of the grand jury, was decided adversely to the appellant on his former appeal.—*Roberts v. State,* at the last term.  The motion to quash the *venire,* because incompetent jurors were summoned on it, was properly overruled, on the authority of *Gray v. State,* 55 Ala. 86; *Commander v. State,* 60 Ala. 1. The second ground of objection, based on the repetition of one name, was equally untenable.—Code, § 4876; *Floyd v. State,* 55 Ala. 61; *Rash v. State,* 61 Ala. 89. The challenge of Seymore as a juror, under the facts stated in the bill of exceptions, was properly allowed.—*Smith v. State,* 55 Ala. 1; *Sparks v. State,* 59 Ala. 82; *Rash v. State, supra;* 2 Hawk. P. C. 568, 571; 5 Bacon's Abr. 365, (11); *Bristow v. Commonwealth,* 15 Gratt. 634; 12 Gratt. 689. The testimony of Locklin, on the preliminary examination, was properly received. 1 Phil. Ev. 369; *Davis v. State,* 17 Ala. 354; *Tharp v. State,* 15 Ala. 749; *Marler v. State,* 67 Ala. 55; *Horton v. State,* 53 Ala.  The charge of the court, as to the previous threats, was correct.—Wharton's Crim. Ev. §§ 84, 757; *Meyer v. State,* 33 Texas, 525; *Evans v. State,* 44 Miss. 762; *New-*

*comb v. State*, 37 Miss. 383 ; *Carroll v. State*, 23 Ala. 28 ; *Hughey v. State*, 47 Ala. 97.

SOMERVILLE, J.—The objections raised to the organization of the grand jury in this case were considered, when the case was last here by appeal, at the December term, 1880. We are satisfied, without further discussion, that the conclusion then reached by us was correct, and that these objections were not well taken.—*Roberts v. State*, at the last term ; Acts 1878–9, p. 204.

The fact that the sheriff summoned on the special *venire* incompetent jurors who were disqualified to act, for any reason, statutory or otherwise, was no ground for quashing the *venire*. Such disqualifications would only furnish grounds upon which to challenge for cause.—*Gray v. State*, 55 Ala. 86. Nor would the rule be otherwise, even if such disqualification was *known* to the sheriff at the time he summoned them, unless it appears from the record that, without them, there was not a sufficient number of good and lawful men, from whom an impartial jury could be selected.—*Commander v. State*, 60 Ala. 1.

The motion to quash the *venire* should, however, have been sustained, very clearly, upon another ground specified in the record. The list of special jurors, ordered by the court to be summoned, contained the names of only *ninety-nine*, instead of one hundred persons, the name of the same person appearing *twice* in the list. The prisoner was on trial for a capital felony, and in actual confinement. He was, therefore, entitled, as matter of right, to the benefit of those statutory provisions which are designed as safeguards to the security of a fair and impartial jury trial, such as the constitution intends to guarantee. The statute is mandatory, that in the trial of capital offenses, " the court *must* make an order, commanding the sheriff to summon not *less than fifty nor more than one hundred* persons, including those summoned on the regular juries of the week, or term when the term does not exceed one week."—Code 1876, § 4874. This order was made by the court, and the number was fixed at *one hundred*, as a proper number of persons to constitute the special *venire* in this case. So long as this order remained unrevoked, the prisoner had the lawful right to insist that the *venire* should be constituted in accordance with such judicial direction. To have summoned *ninety-nine* persons, was just as much a violation of this order, as to have summoned *fifty-nine*, the difference being in degree only, and not in the matter of spirit or substance. So, likewise, the statute is mandatory, and not directory merely, that in

such cases, " a copy of the indictment, and a *list of the jurors summoned for his trial,* including the regular jury, *must be delivered* to him [the prisoner] at least one entire day before the day appointed for his trial."—Code 1876, § 4872. This list should have been one constituted in accordance with the mandate of the court. It should have contained the names of one hundred persons, and not of any less number. This was very important to the prisoner, as affording him " the opportunity of ascertaining whether causes for challenge existed ; and, also, for the purpose of enabling him to exercise, understandingly, the privileges conferred upon him as to peremptory challenges."—*Parsons v. The State,* 22 Ala. 50. The above statutes have been construed by this court not to be directory merely, but as conferring benefits which are matters of right; and a failure to comply with them, if not waived by the defendant in the court below, constitutes such error as to authorize the reversal of a judgment of conviction on appeal to this court.— *Williams v. State,* 48 Ala. 85 ; *Nutt v. State,* 62 Ala. 180 ; *Bell v. State,* 59 Ala. 55 ; *Parsons v. State, supra.*

The above defect is not cured by the influence of section 4876 of the Code, which provides that " a *mistake in the name* of any person summoned as a juror for the trial of a capital offense, either in the *venire,* or in the list of jurors delivered to the defendant, is not sufficient cause to quash the *venire,* or to delay or continue the trial, unless the court, in its discretion, is of opinion that the ends of justice so require." When there is a mere *mistake* in the name, by reason of erroneous orthography, or otherwise, the names of such persons may be discarded, and others summoned to supply their places. But the error in this case is not a mere mistake in the name of one summoned as a juror ; it is a failure of the sheriff to comply with a judicial order made for the organization of a legal jury.—*Hall v. State,* 51 Ala. 9 ; *Floyd v. State,* 55 Ala. 61 ; *Rash v. State,* 61 Ala. 89.

Our conclusion is, that the court erred in not sustaining the motion to quash, so as to have ordered a *venire de novo.*

We think the rule is settled by the decisions of this court, as well as by the principles of criminal procedure at common law, being applicable alike to misdemeanors and felonies, that, where a juror is disqualified to serve, and such disqualification was not known at the time of his acceptance, or was concealed, without lack of diligence to discover it on the part of the objector, he may be challenged for cause at any time before he is sworn. There was, for this reason, no error in permitting the State's solicitor to challenge Seymore, as his disqualification was not disclosed on his *voir dire,* but

only while in the act of taking the required oath. The qualification attempted to be affixed to the oath was tantamount to a refusal to take it. Hence, he had not been sworn when challenged.—1 Bish. Cr. Proc. § 932; *State v. Croome*, 10 Iowa, 308; *Smith v. State*, 55 Ala. 1; *Sparks v. State*, 59 Ala. 82; *Spigener's case*, 62 Ala. 383, 387. The rule is different, however, after a juror has not only been accepted, but has been *sworn* (*Rash v. State*, 61 Ala. 90); unless he has been excused or challenged by consent, or the cause be one that has originated since he was sworn.—Hawkins P. C. 568.

The oath administered to the jury in this case was, "to well and truly try the issue joined between the State and the prisoner." It is insisted that this was not a substantial compliance with the statute, because it omits the sentence, "and a true verdict render according to the evidence, so help you God."—Code, § 4765. It is unnecessary to decide the point, which, in effect, is differently decided in the case of *Edwards v. State*, 49 Ala. 334, and that of *Gardner v. State*, 48 Ala. 263. The conflicting authorities are sought to be reconciled in *Mitchell's case*, 58 Ala. 417, where the true construction of the statute is probably stated by Mr. Justice MANNING. We dismiss this particular subject, with the observation, that it is sufficient, if the entry shows, simply, that the jury was "duly sworn," or was "sworn according to law;" and this is the safer practice, as being more likely to avoid a technical error, the commission of which has brought to this court a multiplicity of cases, and has thereby greatly delayed the speedy administration of justice.—*Mitchell's case, supra.*

We can not see that the court erred, in excluding the question propounded at the instance of the accused, asking "*what business* Rankin" [the deceased] "had been engaged in?" The question was not answered, nor was it stated what was proposed to be proved in response to it. It was too general, moreover, to authorize us to infer that the answer, if allowed to be made, would have been either relevant, material, or beneficial to the defendant.—*Stewart v. State*, 63 Ala. 199; *Man. Co. v. Gibson*, 62 Ala. 369; *Hirschfelder v. Mitchell*, 54 Ala. 419; *Burns v. State*, 49 Ala. 371.

There was no error in the other rulings of the court on the evidence. The questions proposed to the witness Slaughter were either leading, or sought to elicit mere opinions of the witness; or else to introduce the defendant's own declarations, in exculpation of his conduct, which could not be done, unless they constituted a part of the *res gestœ.*—*Billingslea's case*, at present term; *Stewart v. State*, 63 Ala. 199;

[Sullivan v. The State.]

*Burns' case*, 49 Ala. 370; Wharton's Cr. Ev. § 457; *Gassenheimer's case*, 52 Ala. 314.

The testimony of the *deceased witness*, Locklin, taken on the preliminary investigation before the magistrate, was clearly admissible on the trial in the Circuit Court. It was reduced to writing at the time the witness deposed, and, though not signed by him, was proved by the magistrate himself to have been correctly taken, under the direction of the witness, and in his words. Locklin being dead, it was competent to introduce any witness who heard his statements before the committing magistrate, for the purpose of proving them.—Wharton's Cr. Ev. 227; *Horton v. State*, 53 Ala. 489; *Marler v. State*, at the last term; *Davis v. State*, 17 Ala. 354.

The charge given by the court was a correct exposition of the law.—*Roberts v. State*, at the last term; Whart. Cr. Ev. § 757.

For the refusal of the court to sustain the motion, made by the prisoner, to quash the *venire*, as above stated, the judgment of conviction in this cause must be reversed, which is accordingly hereby done, and the cause is remanded for further proceedings. The prisoner will, in the meanwhile, be retained in custody, until discharged by due course of law.