# Hubbard *v.* The State.

### *Indictment for Murder.*

1. *Special venire in capital case; what is revisable.*—The number of jurors to be summoned in a capital case is matter of discretion with the court, provided the number summoned, including the regular jurors for the week or term, is not less than fifty, nor more than one hundred (Code, § 4874); and the exercise of this discretion is not revisable on error.

2. *Indorsements on indictment.*—The only evidence required by statute, as to the authenticity of an indictment, is the indorsement of the foreman of the grand jury; and the indorsement by the clerk, showing when it was filed in court, may be made at any time while the cause is in fieri.

3. *Practice as to filing plea in abatement; what is revisable.*—Whether the defendant shall be permitted to withdraw the plea of not guilty, and interpose a plea in abatement on account of a misnomer, is matter of discretion with the court below, and is not revisable by this court.

4. *Service of copy of indictment on defendant; sufficiency of copy.*—In preparing a copy of the indictment for service on the accused in a capital case (Code, § 4872), the clerk should include in the copy all the indorsements on the original; but the indorsement of the prosecutor's name, or of the fact that there is no prosecutor (*Ib.* § 4778), being matters which are merely directory, and the omission of which does not affect the sufficiency of the indictment, their omission from the copy does not affect its validity, and is not an irregularity which can prejudice the defendant.

5. *Objections to venire, on account of mistakes in names of jurors.* Mistakes in the names of persons summoned as jurors in a capital case, or discrepancies in their names between the *venire* and the copy served on the defendant, are not good ground for quashing the *venire*.

6. *To what witness may testify.*—On a trial under an indictment for infanticide, a witness who examined the dead body of the child may, though not an expert, testify that he "considered it fully developed;" this being a matter of fact open to observation, and the witness being subject to cross-examination as to his use of the words and his knowledge of their meaning.

7. *Abstract charge as to complicity of third person with crime.*—When there is no evidence whatever tending to connect any other person than the accused with the death of the child alleged to have been murdered, or with the concealment of its body where it was found, charges requested, based on the supposed complicity of some other person with the crime, are abstract, and are properly refused on that account.

8. *Proof of venue; failure of record to show.*—When no instruction is given or refused, involving an inquiry into the sufficiency of the evidence to authorize a conviction, or as to the proof of venue, the failure of the bill of exceptions to show that the venue was proved, while it purports

to set out "substantially all the evidence," will not work a reversal of the judgment.

FROM the Circuit Court of Colbert.

Tried before the Hon. H. C. SPEAKE.

The indictment in this case charged, in a single count, that the defendant, Ann Hubbard, "unlawfully and with malice aforethought killed her infant child, whose sex is to this grand jury unknown, by cutting off its head with some instrument which is to this grand jury unknown; which said child was a new-born infant, and nameless." On being arraigned, the defendant pleaded not guilty, and, as the judgment-entry recites, "asked the court for one hundred jurors; which demand the court refused, and the defendant excepted;" and the court then ordered the sheriff to summon "fifty persons as a jury for the trial of this cause, including those who have been summoned on the regular *venire* and are in attendance on the court," and also ordered a copy of the indictment and of the special *venire* to be served on the defendant. The indictment, as set out in the transcript, bears the indorsement "*No prosecutor, a true bill*," which is signed by the foreman of the grand jury; and the clerk's indorsement in these words: "*Filed in open court, this 21st day of September, 1881.*" On the trial, as the judgment-entry and the bill of exceptions each recites, "the defendant moved the court to quash the indictment, because the record fails to show that the same was returned into court; which motion was overruled by the court, and the defendant excepted." The bill of exceptions then recites, "The defendant also moved to quash the *same*, because the copy of the indictment served upon her varied from the original, in this: that the original had the words '*No prosecutor*' indorsed on it, and the copy served on her did not contain these words;" while the judgment-entry recites, that the motion was to quash the *venire* on that ground. The record does not show the action of the court on the motion, nor that any exception was reserved to its ruling. "The defendant then asked leave to withdraw her plea of not guilty, and to be allowed to file a plea in abatement for misnomer; which motion the court refused to grant, and the defendant excepted."

During further proceedings in the cause, the sheriff, in drawing the jury, drew from the hat the name of *Pat. Culligin*, which name did not appear in the list of jurors served on the defendant, though the name of *Patrick Cullinger* did appear on said list, bearing the same number as the name of *Pat. Culligin* on the original *venire;* and for this reason, the defendant objected to further proceeding with the trial. The court ordered the defendant to proceed with the trial, to which the defendant duly excepted. Said juror, being then examined, and

found incompetent, was challenged for cause, and the trial pro-
ceeded, and the defendant exhausted her entire number of
challenges before the *venire* was exhausted; but said challenges
were not exhausted, nor the jury chosen, before the name of
said *Pat. Culligin* was called. On the further call of the
*venire*, the name of Albert J. Guy was called, and he failed to
respond, whereupon the court ordered him fined fifty dollars.
The defendant then objected to going on with the trial, and
offered to prove that there was not a man of that name living
in the county; but the court ordered the trial to proceed, and
the defendant excepted.

"On the trial, the State introduced A. W. Ligon as a witness,
who testified, that he knew the defendant, and had hired her,
about the 1st April, 1881, as a cook and servant about the
house; that when she came to his house she had the appear-
ance of being seven or eight months advanced in pregnancy,
though she denied it, and said that she had the dropsy; that
about the 25th April, after she had been at his house two or
three weeks, an old negro man who lived with him (Jack Mor-
gan, by name), came and knocked at his door during the night,
and he got up and went out, but saw nothing; that the old man
came again to his door, and waked up his wife, who went out;
that he got up and went out after day-light, and found consid-
erable blood on the ground," and a substance which he took to
be the ——; that he then ordered the negro man to take his
horse and buggy, and carry the defendant to her mother; that
the man took her to her mother's house, and on his return
brought him (witness) a bee-gum, in which he found the body
of a new-born child, wrapped up in a shawl, and having its head
nearly severed from its body. "The State then asked the wit-
ness, if the child was fully developed; to which he answered,
that he considered it fully developed. To this question and
answer the defendant objected, because the witness was not
shown to be an expert, and his answer was merely his opinion;
which objection the court overruled, and the defendant ex-
cepted. The witness stated, also, that he examined the finger-
nails and toe-nails of the child, and that they were fully grown.
The State then introduced said Jackson Morgan as a witness,
who lived with said Ligon, and who stated that defendant lived
at said Ligon's house about a month and a half; that she looked
big, and complained a great deal, saying that she had dropsy;
that he stayed in the kitchen with her on the night mentioned
by said Ligon, and she was up and down all night, complaining
of her bowels, and going out frequently; that he told her he
was going to wake up the white folks, but she told him he need
not; that he went and waked up the white folks, and Mrs. Li-
gon came out; that he fell asleep just before day; that he never

[Hubbard v. The State.]

heard any child cry, and did not know that the defendant had any baby; that Ligon sent him with the girl, after breakfast, to her mother's, about two miles in the country; that just before they reached the gate, leading into the field where her mother lived, defendant told him to look under the door-steps when he went back, and find the child, and bury it; that he found the child, on his return, under the steps, wrapped up in a shawl, and showed it to Mr. Ligon, and then buried it; and that the shawl resembled one he had seen the defendant wear. Both of said witnesses testified, also, that the defendant got up that morning, and went about her usual work, milking the cows, &c.; and neither of them reported the facts to any one until about the time of the defendant's arrest, some two or three months after the child was found."

" This was, substantially, all the evidence; and the defendant thereupon requested the following charges," which were in writing: "If, from the evidence, the jury can not say that the murder was not committed by some one else, then they can not say the defendant is guilty;" "To enable the jury to find the defendant guilty, the evidence must show that no one else could have killed the child;" "To enable the jury to convict, the evidence must reasonably show that no one else could have killed the child;" "When it is clear that one of two persons committed the offense, but it is uncertain from the evidence which of the two is guilty, then neither of them can be convicted." The court refused each of these charges, and the defendant excepted to their refusal.

No counsel appeared in this court for the appellant, so far as the record and the docket show; and there is no brief on file.

H. C. TOMPKINS, Attorney-General, for the State.

BRICKELL, C. J.—1. It was matter of discretion in the Circuit Court to order the summoning of any number of jurors for the trial of the accused, if, including the regular juries for the week or term, the number was not reduced below fifty, or did not exceed one hundred.—Code of 1876, § 4874. The exercise of the discretion is not revisable on error.—*Blevins v. State*, 68 Ala. 92.

2. The only evidence of the authenticity of an indictment, which is required by the statute, is the indorsement of the foreman of the grand jury. The indorsement of the clerk, showing its filing in open court, may be made at any time while the cause is *in fieri.*—*Clarkson v. State*, 3 Ala. 378; *Mose v. State*, 35 Ala. 421; *Wesley v. State*, 52 Ala. 182. The indictment bears not only the indorsement of the foreman of the grand

[Hubbard v. The State.]

jury, but also the indorsement of the clerk, showing the day of its filing in open court; and the motion to quash it was properly overruled.

3. Whether the accused should have been permitted to withdraw the plea of not guilty, and interpose a plea in abatement because she was incorrectly named in the indictment, rested in the discretion of the court below, and its action is not revisable.

4. It does not appear that it was shown, as a fact, that there was the asserted variance between the original indictment and the copy served on the accused. The copy was not produced and identified, so that it could be compared with the original. But, if the variance in fact existed, it was immaterial. The statute requiring that the name of the prosecutor shall be indorsed on the indictment, or, if there is no prosecutor, that it shall be so indorsed, is merely directory, and the omission does not affect the sufficiency of the indictment. While it is the duty of the clerk to furnish, for service on the accused, an exact and literal copy of the indictment, with all its indorsements, the omission of an indorsement not a part of the indictment, not entering into its sufficiency, is not an irregularity or error, which can be of prejudice to the accused.—*Ezell v. State*, 54 Ala. 165.

2. The *venire* in a capital case can not be quashed, because of mistakes in the names of the persons summoned as jurors, or because of discrepancies in their names between it and the copy served on the prisoner.—Code of 1876, § 4876; *Hall v. State*, 51 Ala. 9.

6. Whether the child was born alive, and, of consequence, the subject of criminal homicide, was a question of fact for the determination of the jury, in view of all the circumstances of the case. We do not perceive any just objection to the statement of the witness Ligon, that he examined the body of the child, and considered it *fully developed*. The appearance of the body of the child—whether it was fully or partially developed—was matter of observation, and of fact. If the accused desired to ascertain what meaning the witness attached to the term *fully developed*, that could have been elicited on crossexamination.—1 Brick. Dig. 874, § 995.

7. Instructions requested, based, partly or entirely, on a state of facts of which there does not appear to have been evidence, should, for that reason, even though they may state correct legal propositions, be refused.—1 Brick. Dig. 338, § 41. Such instructions, if they have any effect, can serve only to confuse and mislead the jury. There was not the slightest evidence, tending to connect any other person than the accused with the death of the child, or with the concealment of its

[Hubbard v. The State.]

body. It is obvious, if the instructions requested had been given, they would have been an invitation to the jury to pass beyond the evidence, into mere speculations and conjectures as to the complicity of some imaginary person in the crime.

8. The bill of exceptions recites, that it contains "substantially all the evidence," and is silent as to any evidence showing the offense was committed in the county of Colbert. No question appears to have been made in the Circuit Court as to the venue of the offense. No instruction was given, or was requested, upon that point; nor was the attention of the court directed to the want, if there was a want, of evidence showing that the locality of the offense was in Colbert county. In *Frank v. State* (40 Ala. 9), C. J. WALKER dissenting, it was ruled, that if an exception was reserved to the conviction and sentence, the judgment of conviction would on error be reversed, if the bill of exceptions, purporting to set out all the evidence, failed to show the venue was proved, though no charge involving its proof was given or refused. In *Clark v. State* (46 Ala. 307), and *Childs v. State* (55 Ala. 28), it was held error, to refuse an instruction that the defendant could not be convicted, when the bill of exceptions set out all the evidence, and there was a want of evidence of the venue. So, there are numerous cases, asserting that a judgment of conviction will be reversed, because of instructions given which authorize a conviction without proof of the venue.—*Sparks v. State*, 59 Ala. 82; *Gooden v. State*, 55 Ala. 178; *Bain v. State*, 61 Ala. 75. In *Riddle v. State* (49 Ala. 389), a judgment of conviction seems from the very meagre report to have been deemed erroneous and reversible, where the bill of exceptions professed to contain all the evidence, and was silent as to the venue, though no exception of any kind was reserved. In *Williams v. State* (54 Ala. 131), and *Sampson v. State* (*Ib.* 241), we held that, whether the evidence was in any respect sufficient for conviction, could be presented only by an exception to the rulings of the court on the evidence. With the mere question of the sufficiency of the evidence to support a verdict, this court can not interfere, unless it was decided by the court below, and the decision made the subject of an exception at the appropriate time.—*Skinner v. State*, 30 Ala. 694. If there had been an instruction given or refused, involving an inquiry into the sufficiency of the evidence to authorize a conviction, the omission of evidence of the venue would have compelled a reversal of the judgment of conviction, in obedience to the authorities we have cited. But no such instruction having been given or refused, this court can not now interfere. It does not lie within our province to grant new trials, in cases civil or

criminal, because the verdict and judgment may not appear affirmatively to be supported by the evidence.

We find no error in the record, prejudicial to the accused, and the judgment must be affirmed.