# Duncan *v.* The State.

*Indictment for Murder.*

| 88 | 31 |
| 97 | 40 |
| 88 | 31 |
| 141 | 5 |

1. *Conduct and declarations of defendant, before and after homicide, as showing motive.*—The defendant being indicted for the murder of his wife by poison, the prosecution may, as tending to prove a motive for the crime, adduce evidence of his conduct and declarations showing dissatisfaction with his wife, and his admiration for another woman, whom he ran away with and attempted to marry on the third day after his wife's death.

2. *Expert testimony; general objection to evidence.*—On a prosecution for murder by poison, the contents of the stomach of the deceased having been analyzed and found to contain morphia, expert testimony on many subjects might be admissible; and the expert testimony adduced not being set out, this court can not say there was error in overruling a general objection to the whole of it.

FROM the Circuit Court of Dale.

Tried before the Hon. JESSE M. CARMICHAEL.

The defendant in this case, Henry Duncan, was indicted for the murder of his wife, "by giving her morphine," or, as alleged in the second count, " a poison the precise kind of which is unknown to the grand jury;" was convicted of murder in the first degree, and sentenced to death. The body of the deceased was exhumed the day after burial, and the contents of the stomach were analyzed by Dr. Lupton, of Auburn, who testified, that they contained "one grain and six-tenths of morphine." The prosecution proved that the defendant had, with the assistance of a friend, bought a bottle of morphine about a week or ten days before the death of his wife; but he testified in his own behalf that he had

given the bottle to his wife, and she had locked it up in a trunk; and he denied that he had administered any to her. He adduced evidence, also, of declarations made by his wife, who was far advanced in pregnancy, showing that she was very despondent, complained of her condition and her hard lot, and said that she would destroy her unborn child, if she knew how to do it.

Alex. Dean, a witness for the State, testified to a conversation had by him with the defendant, while standing at the place where the grave was dug, on the eveving of the day of his wife's death (Thursday), in which defendant told him, "He was going to do something that might be a leap in the dark, but he was going to risk it;" and asked him to take a note to Georgia Balderee, and a message asking her to meet him Saturday evening "at the big gate near the plum tree;" that he was to go to the house, "and take up a book, and ask her if it was hers, when she would understand, and he was to give her the note." The witness further testified that, "about three or four weeks" before the death of Mrs. Duncan, he had another conversation with defendant, in which the latter told him of an interview between himself and Georgia Balderee, in which he advised her not to marry one Miller, unless she loved him; that he asked witness, "What would you think if she gave me to understand that she loved me better than any other man?" and witness answered, "that he would not be surprised." The defendant moved to exclude this conversation from the jury as evidence, "on the ground that it was irrelevant and misleading;" and he excepted to the overruling of his motion.

J. S. Judah, a witness for the State, testified that he had a conversation with defendant on Friday, the day after his wife's death, in which defendant asked him "to carry him and the Balderee woman to Ozark the next night to marry," but witness refused; that defendant "then set the next Thursday," but on Saturday, "after going to Balderee's," he came to witness, and told him "they had decided to leave on Saturday night, and would probably go to *Headlands*." The defendant moved to exclude from the jury "what was said about marrying the Balderee woman;" and he excepted to the overruling of his motion. William Windham, another witness for the prosecution, testified that, "about two months before the death of the defendant's wife, he heard defendant say that the Balderee woman was a nice, pretty girl, and that he would like to have her." The defendant objected and ex-

[Duncan v. The State.]

cepted to the admission of this evidence. The prosecution proved, also, that the defendant and "the Balderee woman" ran off together on said Saturday night, but were pursued by her father and others, overtaken in Florida, and brought back; and the defendant admitted, in his statement to the jury, that he intended to marry the girl the next day after they were overtaken and brought back.

The defendant reserved another exception, which is thus stated in the bill of exceptions: "On the first day of the trial, the defendant objected to the introduction of experts to testify as to the cause of the death of the deceased, based upon the testimony of witnesses as to her symptoms during her last illness; such objections being founded upon the conflicting nature of the said testimony as to symptoms. The court overruled the objections, and allowed said expert testimony to go to the jury; to which ruling the defendant excepted. On the second day of the trial, this expert testimony was excluded from the jury, and the same expert witnesses were allowed to testify upon an hypothesis; the hypothetical case stated to experts, and their answers *should go in* ( ? ), which the solicitor was prevented to prove and state to them; and said experts testified precisely as they did on the preceding day. The defendant objected to the introduction of each expert witness, and afterwards moved to exclude the testimony of all the experts so examined; which motion and objection the court overruled, and the defendant excepted."

BORDERS & CARMICHAEL, for appellant.—(1.) The testimony of Dean ought to have been excluded.—*Redd v. State,* 68 Ala. 482; 63 Ala. 80; 91 Amer. Dec. 291; 61 Amer. Dec. 141; 1 Greenl. Ev., § 108, n. 2. (2.) The testimony of Judah ought to have been been excluded. The fact that the defendant, after the death of his wife, attempted to marry the Balderee woman was undisputed, and was positively proved. (3.) The testimony of Windham was irrelevant, and was improperly admitted.—76 Ala. 18; 58 Ala. 215; 62 Ala. 154, 170; 68 Ala. 492; 47 Ala. 68; 52 Ala. 313; 35 Ala. 617; 17 Ala. 566; 8 Porter, 511; 3 Ala. 679; 29 Ala. 433. (4.) The experts should not have been allowed to testify in the case, because they were not present during the examination of all the witnesses, and because the testimony as to the symptoms was conflicting.—*Page v. State,* 61 Ala. 16. (5.) This error was not cured by the with-

3

[Duncan v. The State.]

drawal of their testimony on the next day, because, on their re-examination, their testimony was the same as before.

WM. L. MARTIN, Attorney-General, for the State, cited *Marler v. State*, 67 Ala. 55; *Baalam v. State*, 17 Ala. 451; *Johnson v. State*, 17 Ala. 618; *Hall v. State*, 40 Ala. 698.

STONE, C. J.—Many exceptions were reserved in this case, but they naturally resolve themselves into two groups. First, the conduct and conversation of the defendant in reference to the girl Georgia Balderee, done and had both before and after the death of Mrs. Duncan; and, in this connection, the conduct and remarks of the defendant, tending to show dissatisfaction with his wife, for whose murder he was tried and convicted. Each and all of this testimony was competent and legal, as tending to prove a motive for the commission of the offense.—*Baalam v. State*, 17 Ala. 451; *Johnson v. State, Ib.* 618; *Hall v. State*, 40 Ala. 698; *Same v. Same*, 51 Ala. 9; *Marler v. State*, 67 Ala. 55; *Same v. Same*, 68 Ala. 580; *Phillips v. State, Ib.* 469.

There was expert testimony introduced, but what it was, or to what it related, we are not informed, save the single fact deposed to by Dr. Lupton, that he found more than a grain of morphine in the stomach of the deceased. We can imagine many subjects to which expert testimony, on such investigation, would relate,—such as the quantity of morphine likely to produce a fatal result. There was a motion made to exclude the expert testimony in a mass, which the court overruled. There are many reasons why an exception, taken as this was, can not work a reversal. We name but one. We do not know what the testimony was, whether legal or illegal. We can not presume a fact, not shown by the record, and make it a ground of reversal.—1 Brick. Dig. 336, § 12; *Ib.* 337, § 23; *Ib.* 886, § 1186; *Gayle v. C. & M. R. R. Co.*, 8 Ala. 586; 3 Brick. Dig. 443, § 570; *Ib.* 406, § 40.

We find no error in the record, and the judgment of the Circuit Court is affirmed.

In giving directions for the execution of the prisoner, the trial judge employed this language: "At which time [the day he had fixed for the execution], the sheriff of said county shall conduct you from said jail to some proper place, and there hang you by the neck until you are dead." This

may mislead the sheriff, as the statute is specific as to the place of inflicting capital punishment.

The day fixed by the trial court for the execution of the prisoner being passed, it is ordered and adjudged, that Friday, the twenty-first day of February, 1890, be the day fixed and set apart for the execution of the prisoner, and that on that day, between the hours of 10 A. M. and 4 P. M., he be hanged by the neck until he is dead; and the sheriff of Dale county is charged with the execution of this sentence. In carrying this order into effect, the sheriff is commanded to comform strictly to the requirements of the statute.—Code of 1886, §§ 4667 to 4669, inclusive.

### *Indictment for Murder.*

